Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
Joshua R. Hendrickson, Nev. Bar No. 12225
joshh@thiermanbuck.com
**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiff*
*and the Putative Classes*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTOPHER NELSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WAL-MART ASSOCIATES, INC., and DOES 1 through 50, inclusive,<br><br>Defendant(s). | Case No.:  3:21-cv-00066-MMD-CLB<br><br>**FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>1) Failure to Pay Overtime in Violation of 29 U.S.C. § 207;<br><br>2) Failure to Pay Minimum Wages in Violation of the Nevada Constitution;<br><br>3) Failure to Compensate for All Hours Worked in Violation of NRS 608.140 and 608.016;<br><br>4) Failure to Pay Overtime Wages in Violation of NRS 608.140 and 608.018; and<br><br>5) Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.140 and 608.020-050.<br><br>**LIEN REQUESTED PURSUANT TO NRS 608.050**<br><br>**JURY TRIAL DEMANDED** |

- 1 -
FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

COMES NOW Plaintiff CHRISTOPHER NELSON on behalf of himself and all other similarly situated and typical persons and alleges the following:

All allegations in the Complaint are based upon information and belief except for those allegations that pertain to the Plaintiff named herein and his counsel.  Each allegation in the Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the federal claim alleged herein pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 216(b) which states: "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

2.      This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367 because the state law claims alleged herein all arise out of the same transaction and occurrence (*i.e.*, the failure to properly pay all wages due and owing for compensable work performed yet unpaid) and there is no conflict between the procedures applicable to the FLSA and State law claims.  *See Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 528-30 (9th Cir. Nev. Apr. 12, 2013) ("In sum, we agree with the other circuits to consider the issue that the fact that Rule 23 class actions use an opt-out mechanism while FLSA collective actions use an Opt-in mechanism does not create a conflict warranting dismissal of the state law claims." (reversed on other grounds)).

3.      A party seeking to recover unpaid wages has a private right of action pursuant to the Nevada Constitutional Minimum Wage Amendment and Nevada Revised Statute ("NRS") Chapter 608. *See Neville v. Eighth Judicial Dist., Terrible Herbst, Inc.,* 133 Nev. Adv. Op. 95 (Dec. 7, 2017), 406 P.3d 499, 504 (2017) (recognizing that "The Legislature enacted NRS 608.140 to protect employees, and the legislative scheme is consistent with private causes of action for unpaid wages under NRS Chapter 608."); *HG Staffing, LLC v. Second Judicial District*

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

*Court in and for County of Washoe*, 2020 WL 2306318, at *1 (May 7, 2020) ("In *Neville v. Eight Judicial District Court*, 133 Nev. 77, 406 P.3d 499 (2017), we held, by necessary implication, the exhaustion of administrative remedies is not required before filing an unpaid-wage claim in district court.").

4.     Plaintiff made a proper demand for wages due pursuant to NRS 608.140 on December 7, 2020, wherein Plaintiff mailed his demand letter, together with a draft complaint, to Defendant's agent of service, CT Corporation System, located at 701 S. Carson Street Suite 200, Carson City Nevada, 89701.  Plaintiffs demand for wages was received by Defendant's agent of service on December 8, 2020.

5.     Plaintiff also claims a private cause of action to foreclose a lien against the property owner for wages due pursuant to NRS 608.050.

6.     Venue is proper in the Court because the Defendant named herein maintains a principal place of business or otherwise is found in the judicial district and many of the acts complained of herein occurred in Storey County, Nevada.

## PARTIES

7.     Plaintiff CHRISTOPHER NELSON (hereinafter "Plaintiff" or "Mr. Nelson") is a natural person who is and was a resident of the State of Nevada at all relevant times herein.  Mr. Nelson was employed by Defendant as a non-exempt hourly employee from on or about October 1, 2007 to the present.

8.     Defendant WAL-MART ASSOCIATES, INC. (hereinafter "Defendant" or "Walmart") is a foreign corporation incorporated in the state of Delaware, with a principal place of business in Bentonville, Arkansas, and is an employer engaged in commerce under the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* and is an employer under NRS 608.011.

9.     The identity of DOES 1-50 is unknown at the time and the Complaint will be amended at such time when the identities are known to Plaintiff.  Plaintiff is informed and believes that each Defendant sued herein as DOE is responsible in some manner for the acts, omissions,

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

or representations alleged herein and any reference to "Defendant," "Defendants," "Walmart" herein shall mean "Defendant and each of them."

## FACTUAL ALLEGATIONS

10.  Defendant operates approximately 44 food distribution warehouses across the country.

11.  Plaintiff has been employed by Defendant as a non-exempt hourly paid warehouse worker at Defendant's food distribution warehouse located at 2195 NV-439, Sparks, NV 89434.

12.  Defendant's food distribution warehouses are divided into "dry" and "cold" sections; Plaintiff has worked in both.

13.  Plaintiff is currently assigned to the dry section as a "Processor". Plaintiff's current rate of pay is $22.35 an hour; his base overtime rate is $33.53.

14.  Prior to his current assignment, Plaintiff was assigned to the cold section as a "Processor." Plaintiff's rate of pay in the cold section at the time of his transfer to the dry section was $22.60 an hour; his base overtime rate was $33.90.

15.  Plaintiff is currently assigned to work four (4) shifts per workweek for a total of 40 paid work hours. His current scheduled shift time is from 4:00 a.m. to 2:30 p.m., with a thirty (30) minute unpaid lunch break. In other words, Plaintiff is on-site for a ten and a half hour shift (10.5) but is only paid for ten (10) hours each shift because of the 30-minute unpaid lunch break.

16.  Defendant requires that Plaintiff and all other similarly situated employees be at their assigned station and ready to work at the shift start time.

17.  This case concerns the pre-shift activities that Plaintiff and all other similarly situated employees were required to perform without compensation in both the dry and cold sections at Defendant's food processing warehouses.

### Dry Section Pre-Shift Activities

18.  Defendant requires Plaintiff and all other similarly situated employees to be ready to work at shift start time. However, Defendant does not allow Plaintiff and all other similarly situated employees to clock-in to the timekeeping system until immediately before their scheduled shift start time.

19.     In order to be ready to work at the shift start time, Defendant requires that Plaintiff and all other similarly situated employees retrieve a mobile scanner and printer from the system control window.  Plaintiff and all other similarly situated employees scan their employee badges at the control window in order to check out their equipment, thereby generating a data trail (and presumably a time stamp).

20.     The mobile scanner and printer are integral and indispensable to the job of a warehouse worker in the dry section of Defendant's warehouses.  Plaintiff and all other similarly situated employees use this equipment throughout their workday to inventory and label products for ultimate distribution to Defendant's retail locations.

21.     Despite the integral and indispensable nature of the equipment to the job of a warehouse worker, Defendant does not compensate Plaintiff or any other similarly situated employee for the time it takes to retrieve these items before their scheduled shifts.

22.     Plaintiff estimates that he regularly retrieves his equipment approximately fifteen (15) minutes prior to his scheduled shift so that he has sufficient time to (i) check out the equipment and (ii) proceed to his station for his start-up meeting at the start of his shift.  Because Plaintiff is not compensated for these dry section pre-shift activities, Plaintiff alleges that he is entitled to recover 15-minutes in wages for each and every shift that he has worked over the relevant time period alleged herein.

23.     For example, in the pay period from October 10, 2020 to October 23, 2020, Plaintiff worked 81.35 hours.[1]  During that pay period, Plaintiff worked Tuesday October 13, 2020 through Friday October 16, 2020 and then again from Tuesday October 20, 2020 through Friday October 23, 2020.  He worked a total of four (4) ten and a half hour shifts (10.5) shifts, with a 30-minute lunch break, each of those workweeks.  Because he was not compensated for the dry section pre-shift work activities described above, and since Plaintiff worked at least forty (40) hours for each workweek, the unpaid dry section pre-shift activities are owed at Plaintiff's overtime rate of $33.53.  Plaintiff is owed 1 hour for each workweek (15-minutes per shift) at his

---

[1] A true and correct copy of this online paystub for the pay period of October 10, 2020 to October 23, 2020 is attached hereto as Exhibit 1.

overtime rate.  Therefore, Plaintiff must be compensated $33.53 for each of these two exemplar workweeks.

24.     While the above exemplar demonstrates one pay period and two workweeks wherein Plaintiff is owed unpaid wages, he seeks all the owed and unpaid wages due and owing to him and to all other similarly situated employees over the full course of the relevant time period alleged in this complaint.

### Cold Section Pre-Shift Activities

25.     Prior to his re-assignment to the dry section on or about August 18, 2020, Plaintiff worked for years in the cold section.

26.     As with its "ready for work" policy in the dry section, Defendant required Plaintiff and all other similarly situated employees to be ready to work at shift start time in the cold section, too.  However, as with its "ready for work policy" in the dry section, Defendant does not allow Plaintiff and all other similarly situated employees to clock-in to the timekeeping system until immediately before their scheduled shift start time.

27.     While Plaintiff was not required to retrieve a scanner or printer prior to his shift in the cold section, he and all other similarly situated employees were required to don personal protective equipment (PPE)—i.e., freezer gear—prior to the start of their respective shifts.

28.     The  cold section is the freezer/refrigerator section of the food warehouse wherein freezer and refrigerated items are distributed.  Understandably, Defendant requires all employees who work in the cold section to wear "cold store clothing" or "freezer wear" as PPE to prevent workplace illness and injury due to the cold environment.  Therefore, Defendant requires Plaintiff and all other similarly situated employees to don the following PPE prior to the start of their respective shifts:

- RefrigiWear insulated bibs[2];

---

[2] RefrigiWear markets their PPE to cold storage employers and employees:

> Cold storage employees are dedicated to ensuring the proper care and storage of customers' products, which means a cold working environment no matter the season. RefrigiWear has spent the last 60 years helping cold storage employees stay warm and protected in

- RefrigiWear thermal jacket;

- Thermal hooded sweatshirt;

- Stocking hat; and

- Wool socks.

29.     Donning this PPE is integral and indispensable to the job of a warehouse worker in the cold section of Defendant's warehouses.  A cold section warehouse worker cannot perform his or her job safely and/or effectively without donning this PPE.

30.     Despite the integral and indispensable nature of this PPE to the job of a warehouse worker in the cold section, Plaintiff and all other similarly situated employees were not compensated for the time they spent to don this PPE.  Plaintiff and all other similarly situated employees were expected to don this PPE with enough time prior to the start of their respective shifts so that their PPE was fully donned and they were ready to start working at the beginning of the shift.

31.     Plaintiff estimates that it regularly took him approximately fifteen (15) minutes prior to his scheduled shift so that he has sufficient time to (i) don his PPE and (ii) proceed to his station for his start-up meeting at the start of his shift.  Because Plaintiff was not compensated for these cold section pre-shift activities, Plaintiff alleges that he is entitled to recover 15-minutes in wages for each and every shift that he has worked over the relevant time period alleged herein.

32.     For example, in the pay period from June 20, 2020 to July 3, 2020, Plaintiff worked 80.68 hours.[3] During that pay period, Plaintiff is informed and believes that he worked Tuesday

the cooler and freezer while they work. We offer cold apparel like our iconic Iron-Tuff line and our stylish softshell options. We help you keep a professional look with embroidery services and stylish cooler and freezer gear that helps you master the cold. Whether it is jackets, pants, base layers, boots, or one of our many other products, RefrigiWear has the gear to keep cold storage employees protected from the cold.

*See* https://www.refrigiwear.com/view/cold-storage (last visited Dec. 2, 2020).

[3] A true and correct copy of this online paystub for the pay period of June 20, 2020 to July 3, 2020, is attached hereto as Exhibit 2.

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

June 23, 2020 through June 26, 2020 and then again from Tuesday June 30, 2020 through Friday July 3, 2020.  He worked a total of four (4) ten and a half hour shifts (10.5) shifts, with a 30-minute lunch break, each of those workweeks.  Because he was not compensated for the cold section pre-shift work activities described above, and since Plaintiff worked at least forty (40) hours for each workweek, the unpaid cold section pre-shift activities are owed at Plaintiff's overtime rate of $33.90.  Plaintiff is owed 1 hour for each workweek (15-minutes per shift) at his overtime rate.  Therefore, Plaintiff must be compensated $33.90 for each of these two exemplar workweeks.

33.     While the above exemplar demonstrates one pay period and two workweeks wherein Plaintiff is owed unpaid wages, he seeks all the owed and unpaid wages due and owing to him and to all other similarly situated employees over the full course of the relevant time period alleged in this complaint.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

34.     Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

35.     Plaintiff brings this action on behalf of himself and all other similarly situated and typical employees as a collective action under the federal Fair Labor Standards Act ("FLSA"). Plaintiff brings this action on behalf of himself and the following Classes of individuals (hereinafter collectively referred to as the "FLSA Classes"):

**FLSA Dry Section Class:**     All non-exempt hourly paid food distribution warehouse employees who (i) were employed by Defendant in the United States at any time within 3 years from the filing of the original complaint in this action, (ii) worked in the dry section of the food distribution warehouse, and (iii) were required to retrieve a scanner, printer, or other electronic device, pre shift.

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

**FLSA Cold Section Class:** All non-exempt hourly paid food distribution warehouse employees who (i) were employed by Defendant in the United States at any time within 3 years from the filing of the original complaint in this action, (ii) worked in the cold section of the food distribution warehouse, and (iii) were required to don cold storage personal protective equipment (PPE) pre shift.

36.     With regard to the conditional certification mechanism under the FLSA, Plaintiff is similarly situated to those he seeks to represent because Plaintiff and all potential FLSA Dry Section and Cold Section Class members are alleged victims of Defendant's allegedly unlawful pre-shift work requirements.

37.     The statute of limitations under the FLSA is 3 years for willful violations. Defendant's policies of denying compensation for the time spent (i) retrieving equipment pre shift in the dry section of the food distribution warehouse and (ii) donning PPE pre shift, are legally untenable.  Defendant has sought to avoid its wage-hour obligations by neglecting to compensate employees for these pre-shift work activities.  Defendant's reasons for denying compensation for these activities was a financial decision and Defendant has unlawfully retained wages that should otherwise have been paid out to Plaintiff and all putative FLSA Dry Section and Cold Section Class members.  Accordingly, Defendant's conduct in this regard has been willful.

38.     Plaintiff has signed a Consent to Sue form, which was filed contemporaneously with the original complaint on December 23, 2020.  (*See* ECF No. 1-2, at pp. 19-21.)

## CLASS ACTION ALLEGATIONS

39.     Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

40.     Plaintiff brings this action on behalf of himself and the following Classes of individuals (hereinafter collectively referred to as the "Nevada Classes"):

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

**Nevada Dry Section Class:** All non-exempt hourly paid food distribution warehouse employees who (i) were employed by Defendant in the State of Nevada at any time within 3 years from the filing of the original complaint in this action, (ii) worked in the dry section of the food distribution warehouse, and (iii) were required to retrieve a scanner, printer, or other electronic device, pre shift.

**Nevada Cold Section Class:** All non-exempt hourly paid food distribution warehouse employees who (i) were employed by Defendant in the State of Nevada at any time within 3 years from the filing of the original complaint in this action, (ii) worked in the cold section of the food distribution warehouse, and (iii) were required to don cold storage personal protective equipment (PPE) pre shift.

41.     NRCP Rule 23 Class treatment for all claims alleged in this complaint is appropriate in this case for the following reasons:

A.      The Class is Sufficiently Numerous: Upon information and belief, Defendant employs, and has employed, in excess of 1,000 Nevada Class Members within the applicable statute of limitations. Because Defendant is legally obligated to keep accurate payroll records, Plaintiff alleges that Defendant's records will establish the identity and ascertainability of members of the Nevada Classes as well as their numerosity.

B.      Common Questions of Law and Fact Exist: Common questions of law and fact exist and predominate as to Plaintiff and the Class, including, without limitation, the following: Whether the dry section pre-shift activities are compensable under Nevada law; Whether the cold section pre-shift donning of PPE is compensable under Nevada law; Whether members of the Nevada Classes who are former employees are entitled to continuation wages in the event that they are successful in the underlying claims for compensation.

C.      Plaintiff's Claims are Typical to Those of Fellow Class Members: Each member of the Nevada Classes is and was subject to the same practices, plans, and/or policies as

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff, as follows: Defendant required Plaintiff and all members of the Nevada Dry Section Class to retrieve equipment pre shift without compensation; Defendant required Plaintiff and all members of the Nevada Cold Section Class to don PPE pre shift without compensation.

D.     <u>Plaintiff is an Adequate Representatives of the Class</u>:  Plaintiff will fairly and adequately represent the interests of the Classes because Plaintiff is a member of the Nevada Classes, he has issues of law and fact in common with all members of the Nevada Classes, and he does not have any interests antagonistic to members of the Nevada Classes.  Plaintiff and counsel are aware of their fiduciary responsibilities to Class Members and are determined to discharge those duties diligently and vigorously by seeking the maximum possible recovery for Class Members as a group.

E.     <u>Predominance/Superiority</u>:     Common questions predominate over individualized issues.  A class action is also superior to other available means for the fair and efficient adjudication of their controversy.  Each Class Member has been damaged and is entitled to recovery by reason of Defendant's illegal policy and/or practice of failing to compensate its employees in accordance with federal and Nevada wage and hour law.  The prosecution of individual remedies by each Class Member will be cost prohibitive and may lead to inconsistent standards of conduct for Defendant and result in the impairment of Class Members' rights and the disposition of their interest through actions to which they were not parties.

### **FIRST CAUSE OF ACTION**

**Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207**

(On Behalf of Plaintiff and Members of the FLSA Classes Against Defendant)

42.     Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

43.     29 U.S.C. Section 207(a)(1) provides as follows: "Except as otherwise provided in the section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours

unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

44.     By failing to compensate Plaintiff and FLSA Class Members for time spent engaging in pre-shift activities set forth above, Defendant failed to pay Plaintiff and members of the FLSA Classes overtime for all hours worked in excess of forty (40) hours in a week in violation of 29 U.S.C. Section 207(a)(1).

45.     Defendant's unlawful conduct has been widespread, repeated, and willful. Defendant knew or should have known that its policies and practices have been unlawful and unfair.

46.     Wherefore, Plaintiff demands for himself and for all others similarly situated, that Defendant pay Plaintiff and all members of the FLSA Classes one and one-half times their regular hourly rate of pay for all hours worked in excess of forty (40) hours a week during the relevant time period together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

## SECOND CAUSE OF ACTION

### Failure to Pay Minimum Wages in Violation of the Nevada Constitution

(On Behalf of Plaintiff and Members of the Nevada Classes Against Defendant)

47.     Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

48.     Article 15 Section 16 of the Nevada Constitution sets forth the minimum wage requirements in the State of Nevada and further provides that "[t]he provisions of the section may not be waived by agreement between an individual employee and an employer. . . .  An employee claiming violation of the section may bring an action against his or her employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce the section shall be awarded his or her reasonable attorney's fees and costs."

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

49.     By failing to compensate Plaintiff and all other members of the Nevada Classes for the time spent engaging in pre-shift activities set forth above, Defendant effectively paid Plaintiff and all members of the Nevada Classes zero dollars ($0.00) for the compensable work they performed pre shift in violation of the Nevada Constitution.

50.     Wherefore, Plaintiff demands for himself and for all other Class Members that Defendant pays Plaintiff and members of the Nevada Classes, at the very least, their unpaid minimum wages for all hours worked during the relevant time period alleged herein, together with attorneys' fees, costs, interest, and punitive damages, as provided by law.

### THIRD CAUSE OF ACTION

**Failure to Pay Wages for All Hours Worked in Violation of NRS 608.140 and 608.016**

(On Behalf of Plaintiff and Members of the Nevada Classes Against Defendant)

51.     Plaintiff realleges and incorporates by this reference all the paragraphs above in the Complaint as though fully set forth herein.

52.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

53.     NRS 608.016 entitled, "Payment for each hour of work; trial or break-in period not excepted" states that: "An employer shall pay to the employee wages for each hour the employee works. An employer shall not require an employee to work without wages during a trial or break-in period."

54.     Nevada Administrative Code ("NAC") 608.115(1), entitled "Payment for time worked. (NRS 607.160, 608.016, 608.250)" states: "An employer shall pay an employee for all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee."

55.     By failing to compensate Plaintiff and members of the Nevada Classes for the time spent engaging in the pre-shift activities set forth above, Defendant failed to pay Plaintiff and members of the Nevada Classes for all the compensable hours they worked  pre shift in violation of NRS 608.140 and 608.016.

56. Wherefore, Plaintiff demands for himself and for all Class Members payment by Defendant at their regular rate of pay, or any applicable overtime premium rate, whichever is higher, for all hours worked but not paid during the relevant time period alleged herein, together with attorneys' fees, costs, and interest as provided by law.

## FOURTH CAUSE OF ACTION

### Failure to Pay Overtime Wages in Violation of NRS 608.140 and 608.018

(On Behalf of Plaintiff and all members of the Nevada Classes)

57. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

58. NRS 608.140 provides that an employee has a private right of action for unpaid wages.

59. NRS 608.018(1) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works: (a) More than 40 hours in any scheduled week of work; or (b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

60. NRS 608.018(2) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works more than 40 hours in any scheduled week of work.

61. By failing to compensate Plaintiff and all other members of the Nevada Classes for the time spent engaging in pre-shift activities as set forth above, Defendant failed to pay Plaintiff and members of the Nevada Classes daily overtime premium pay to those members of the Nevada Classes who were paid a regular rate of less than one and one-half times the minimum wage premium pay and, failed to pay a weekly premium overtime rate of pay of time and one half their regular rate for all members of the Nevada Classes who worked in excess of forty (40) hours in a week in violation of NRS 608.140 and 608.018.

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

62.     Wherefore, Plaintiff demands for himself and for all members of the Nevada Classes payment by Defendant at their applicable overtime premium rate for all hours worked but not paid during the relevant time period alleged herein, together with attorneys' fees, costs, and interest as provided by law.

## FIFTH CAUSE OF ACTION

**Failure to Timely Pay All Wages Due and Owing Upon Termination Pursuant to NRS 608.140 and 608.020-.050**

(On Behalf of Plaintiff and Members of the Nevada Classes Against Defendant)

63.     Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

64.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

65.     NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

66.     NRS 608.040(1)(a-b), in relevant part, imposes a penalty on an employer who fails to pay a discharged or quitting employee: "Within 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

67.     NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default."

68.     By failing to pay members of the Nevada Classes their applicable wages as described above, Defendant has failed to pay members of the Nevada Classes who are former employees all their wages due and owing at the time of their separation from employment.

69.     Despite demand, Defendant willfully refuses and continues to refuse to pay all members of the Nevada Classes who are former employees their full wages due and owing to them upon the termination of their employment.

70.     There is no good-faith defense to the imposition of continuation wages under NRS 608.040-.050.  *See D'Amore v. Caesars Enterprise Svcs, LLC, et al.*, Case No. 2:18-cv-01990-JCM (Dec. 16, 2019).

71.     Wherefore, Plaintiff demands thirty (30) days wages under NRS 608.140 and 608.040, and an additional thirty (30) days wages under NRS 608.140 and 608.050, for all members of the Nevada Classes who are former employees during the relevant time period alleged herein, together with attorneys' fees, costs, and interest as provided by law.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## PRAYER FOR RELIEF

Wherefore Plaintiff, by himself and on behalf of all members of the Classes, pray for relief as follows relating to their class action allegations:

1.     For an order conditionally certifying the action under the FLSA and providing notice to all members of the FLSA Classes so they may participate in the lawsuit;

2.     For an order appointing Plaintiff as the Representative of the FLSA Classes and his counsel as Class Counsel;

3.     For damages according to proof for overtime compensation for all hours worked over 40 per week;

4.     For liquidated damages pursuant to 29 U.S.C. § 261(b);

5.     For an order certifying the Nevada Classes under Nevada Rule of Civil Procedure 23;

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

6.      For an order appointing Plaintiff as the Representative of the Classes and his counsel as Class Counsel;

7.      For damages according to proof for the applicable minimum rate pay under the Nevada Constitution for all hours worked;

8.      For damages according to proof for regular rate pay under NRS 608.140 and 608.016 for all hours worked;

9.      For damages according to proof for overtime compensation under NRS 608.140 and 608.018 for all hours worked for those employees who earned a regular rate of less than one and one-half times the minimum wage for hours worked in excess of 8 hours per day and/or for all class members for overtime premium pay of one and one half their regular rate for all hours worked in excess of 40 hours per week;

10.     For continuation wages pursuant to NRS 608.140 and 608.040-.050;

11.     For a lien on the property where Plaintiff and all members of the Nevada Classes labored pursuant to NRS 608.050;

12.     For interest as provided by law at the maximum legal rate;

13.     For punitive damages;

14.     For reasonable attorneys' fees authorized by statute;

15.     For costs of suit incurred herein;

16.     For pre-judgment and post-judgment interest, as provided by law, and

17.     For such other and further relief as the Court may deem just and proper.

DATED: April 2, 2021                          THIERMAN BUCK LLP


                                              */s/ Joshua D. Buck*
                                              Mark R. Thierman
                                              Joshua D. Buck
                                              Leah L. Jones
                                              Joshua R. Hendrickson

                                              *Attorneys for Plaintiff*
                                              *and the Putative Classes*

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Index of Exhibits</u>**

| NO. | DESCRIPTION | NO. OF PAGES |
|---|---|---|
| 1 | October 10, 2020 to October 23, 2020 Online Paystub | 2 |
| 2 | June 20, 2020 to July 3, 2020 Online Paystub | 2 |

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

# EXHIBIT 1

October 10, 2020 to  October 23, 2020 Online Paystub

# EXHIBIT 1

# Statement of Earnings and Deductions.

Wal-Mart Associates, Inc., 702 S.W. 8th St., Bentonville, Arkansas 72716. ☎ 479-273-4000

**Pay Period: 10/10/2020 - 10/23/2020**



Deposit Date: 10-29-2020
Advice # 542586917

**PAID TO**

## CHRISTOPHER R NELSON                                    **$1,283.82**

Wells Fargo

CHECK DEPOSIT                                    $1,283.82

THIS IS NOT A REAL CHECK

| EARNINGS | HOURS | RATE | CURRENT | YEAR TO DATE |
|---|---|---|---|---|
| REGULAR EARNING | 80.00 | $22.2500 | $1,780.00 | $34,214.24 |
| OVERTIME EARN | 1.35 | $33.3750 | $45.06 | $99.64 |
| COVID-LS | | | $0.00 | $300.00 |
| LUMP SUM HRLY | | | $0.00 | $600.00 |
| OVERTIME/INCT | | | $0.00 | $0.42 |
| PROT PTO USED | | | $0.00 | $223.00 |
| PTO PAY | | | $0.00 | $2,479.50 |
| CO STK CONT | | | $10.50 | $168.00 |
| REIMB NONTXBL | | | $0.00 | $1,192.24 |
| WHSE INCENTIVE | | | $0.00 | $1,500.87 |
| WRKDHRS | 81.35 | | | |
| **Total** | | | **$1,835.56** | **$40,837.91** |

| DEDUCTIONS | CURRENT | YEAR TO DATE |
|---|---|---|
| INS MEDICAL * | $29.20 | $641.29 |
| INS DENTAL * | $8.30 | $182.59 |
| INS AD&D * | $0.97 | $21.33 |
| INS STD | $6.21 | $134.00 |
| 401K * | $109.50 | $2,365.03 |
| CO STK CONT | $10.50 | $168.00 |
| STOCK PURCH | $70.00 | $1,120.00 |
| INS VIS * | $2.76 | $60.71 |
| **Total** | **$237.44** | **$5,172.95** |

| TAXES | CURRENT | YEAR TO DATE |
|---|---|---|
| FEDERAL TAX | $177.04 | $3,964.63 |
| SOCIAL SECURITY | $111.24 | $2,401.86 |
| MEDICARE | $26.02 | $561.73 |
| **Total** | **$314.30** | **$6,928.22** |

| | CURRENT | YEAR TO DATE |
|---|---|---|
| **NET PAY** | **$1,283.82** | **$28,736.74** |

All Material Walmart Confidential. © 2020



Net Pay
Deductions
Taxes

10/10 - 10/23

| PTO | HRS |
|---|---|
| PTO AVAILABLE | 72.87 |
| SICK AVAILABLE | 69.58 |
| PROTPTOUSEDYTD | 10.00 |
| PROTECTED PTO | 76.52 |

| CATEGORY | |
|---|---|
| Pay Category | Hourly |

| FEDERAL TAX WITHHOLDING | |
|---|---|
| Tax Method | Single |
| Exemptions | 0 |
| Additional Withholding | $0.00 |

| STATE TAX WITHHOLDING | |
|---|---|
| Tax Method | Single |
| Exemptions | 0 |
| Additional Withholding | $0.00 |

# EXHIBIT 2

June 20, 2020 to July 03, 2020 Online Paystub

# EXHIBIT 2

## Statement of Earnings and Deductions.

Wal-Mart Associates, Inc., 702 S.W. 8th St., Bentonville, Arkansas 72716. 📞 479-273-4000

**Pay Period: 06/20/2020 - 07/03/2020**



Deposit Date: 07-09-2020
Advice # 530671732

**PAID TO**

# CHRISTOPHER R NELSON

# $1,289.08

Wells Fargo                              CHECK DEPOSIT                              $1,289.08

THIS IS NOT A REAL CHECK

| EARNINGS | HOURS | RATE | CURRENT | YEAR TO DATE |
|---|---|---|---|---|
| REGULAR EARNING | 79.88 | $22.6000 | $1,805.29 | $21,244.38 |
| OVERTIME EARN | 0.80 | $33.9000 | $27.12 | $27.12 |
| LUMP SUM HRLY | | | $0.00 | $600.00 |
| PROT PTO USED | | | $0.00 | $223.00 |
| PTO PAY | | | $0.00 | $1,353.00 |
| CO STK CONT | | | $10.50 | $84.00 |
| REIMB NONTXBL | | | $0.00 | $1,192.24 |
| WHSE INCENTIVE | | | $0.00 | $904.33 |
| WRKDHRS | 80.68 | | | |
| **Total** | | | **$1,842.91** | **$25,688.07** |

| DEDUCTIONS | CURRENT | YEAR TO DATE |
|---|---|---|
| INS MEDICAL * | $29.20 | $407.69 |
| INS DENTAL * | $8.30 | $116.19 |
| INS AD&D * | $0.97 | $13.57 |
| INS STD | $6.23 | $82.78 |
| 401K * | $109.94 | $1,461.09 |
| CO STK CONT | $10.50 | $84.00 |
| STOCK PURCH | $70.00 | $560.00 |
| INS VIS * | $2.76 | $38.63 |
| **Total** | **$237.90** | **$3,243.95** |

| TAXES | CURRENT | YEAR TO DATE |
|---|---|---|
| FEDERAL TAX | $178.10 | $2,415.02 |
| SOCIAL SECURITY | $111.70 | $1,483.02 |
| MEDICARE | $26.13 | $346.84 |
| **Total** | **$315.93** | **$4,244.88** |

| | CURRENT | YEAR TO DATE |
|---|---|---|
| **NET PAY** | **$1,289.08** | **$18,199.24** |

**CURRENT PAY OVERVIEW**

All Material Walmart Confidential. © 2020



Net Pay
Deductions
Taxes

06/20 - 07/03

| PTO | HRS |
| --- | --- |
| PTO AVAILABLE | 59.97 |
| SICK AVAILABLE | 85.58 |
| PROTPTOUSEDYTD | 10.00 |
| PROTECTED PTO | 55.51 |
| PERS HRS AVAIL | 0.01 |

| CATEGORY | |
| --- | --- |
| Pay Category | Hourly |

| FEDERAL TAX WITHHOLDING | |
| --- | --- |
| Tax Method | Single |
| Exemptions | 0 |
| Additional Withholding | $0.00 |

| STATE TAX WITHHOLDING | |
| --- | --- |
| Tax Method | Single |
| Exemptions | 0 |
| Additional Withholding | $0.00 |