Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
Joshua R. Hendrickson, Nev. Bar No. 12225
joshh@thiermanbuck.com
**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiffs*
*and the Putative Classes*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CHRISTOPHER NELSON, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

WAL-MART ASSOCIATES, INC., and DOES 1 through 50, inclusive,

Defendant(s).

Case No.: 3:21-cv-00066-MMD-CLB

**DECLARATION OF DONNA KARSTEN**

I, Donna Karsten, hereby declare and state as follows:

1. I am over the age of eighteen. I am a current resident of Sparks, Nevada and I have been a resident during all times relevant to this action.

2. I have personal knowledge of the facts and circumstances set forth in this declaration. If I was called as a witness, I would and could competently testify to the matters set forth herein.

3. I have been working for Wal-Mart as a non-exempt hourly paid warehouse worker since on or about July 22, 2006 to the present.

4. When I was first hired, I understood I would be paid the agreed upon hourly rate for all work activities I performed for Wal-Mart. I am currently making approximately $27.10 per hour for my work in the dry section as a Hauler.

5. I am regularly scheduled to work ten hours a day, four days per week, from 4:30 a.m. to 10 p.m. We were also scheduled for an unpaid half-hour lunch. Wal-Mart kept track of my hours worked on-the-clock so they would have a record of all the hours that I was clocked-in to their timekeeping system.

6. Wal-Mart's food distribution warehouses are divided into "dry" and "cold" sections. I currently work in the dry section of the warehouse and also occasionally work in the cold section.

7. In or around June or July of 2021, Wal-Mart changed its policies and practices and began instructing some employees, including me, to begin clocking in at the front of the warehouse as opposed to our assigned stations, which had previously been the requirement. This change has helped avoid some of the off-the-clock work described below, and I believe that Wal-Mart made the change in response to this lawsuit. Despite changing its policies, Wal-Mart never paid us any wages or otherwise compensated us for all the time we had already spent working of-the-clock prior to their change in policy. For the sake of clarity, the following paragraphs describe my work experience prior to Wal-Mart's recent change in procedure.

8. Regardless of whether we were working in the dry or cold section of the warehouse, Wal-Mart required all non-exempt hourly paid food distribution warehouse employees to be at our assigned station and ready to work at the start of our regularly scheduled shift. Wal-Mart did not allow us to clock-in to the timekeeping system until immediately before our scheduled shift start time. In order to be ready to work at the shift start time, and before clocking in, Wal-Mart required us to complete work activities off-the-clock without compensation prior to the start of our shift.

9. For shifts that I worked in the dry section, I was first required to retrieve required equipment, such as a scan gun and PE or PC (electronic pallet jack), before driving my pallet jack over to the dock to clock in at the start of my regularly scheduled shift. I was required to

scan my card in order to check out a PC, and upon information and belief, I believe that Wal-Mart maintains an electronic record of the times that I check out my equipment prior to the start of my shift. The equipment that I pick up at the beginning of the day is necessary for me to do my job, and I would not be able to do my job without it. All hourly paid dry section warehouse workers in my position use this equipment throughout the workday to haul and move products as well as to inventory and label products for ultimate distribution to Wal-Mart's retail stores. If we didn't have the equipment, we would not know what products need to go where, would not know where products are located, would not be able to track where the products are or where they are going, and we would not even be able to move the products since they are located on large pallets that we can't move without the pallet jack.

10. I estimate that I regularly retrieved my equipment approximately ten (10) minutes prior to my scheduled shift for each and every day that I worked in the dry section, so that I would have sufficient time to (i) check out the equipment and (ii) proceed to my station for my start-up meeting at the start of my shift. Wal-Mart did not compensate us for the time spent performing this work. This work was in addition to my regularly scheduled time, and as a result I regularly worked overtime over 40 hours in a workweek and over 80 hours in a pay period. Upon information and belief and through my own observations, every hourly paid employee who I work with also worked overtime off-the-clock prior to the start of our shifts for Wal-Mart performing the same or similar work as described above.

11. Upon information and belief and through my own observations, employees who regularly work in the cold section are similarly required to retrieve required equipment as well as put on personal protective equipment (PPE)—i.e., freezer gear—prior to the start of their regularly scheduled shift. The cold section is the freezer/refrigerator section of the food warehouse where freezer and refrigerated items are distributed. Upon information and belief and through my own observations, Wal-Mart requires employees assigned to the cold section to perform this work off-the-clock before clocking in and does not compensate cold section employees for the time spent performing that work.

12. Upon information and belief and through my own observations, Wal-Mart requires all employees who work in the cold section to wear "cold store clothing" or "freezer wear" as PPE to prevent workplace illness and injury due to the cold environment. Specifically, Wal-Mart required me and all other employees who work in the cold section to don the following PPE prior to the start of our respective shifts: RefrigiWear insulated bibs; RefrigiWear thermal jacket; Thermal hooded sweatshirt; Stocking hat; and Wool socks. Because of the low temperatures, cold section warehouse workers cannot perform our jobs safely and/or effectively without donning this PPE.

13. Upon information and belief and through my own observations, Wal-Mart is aware that its non-exempt, hourly paid warehouse workers were performing the work described above off-the-clock without compensation prior to the start of our shifts because Wal-Mart required all employees to perform this work, Wal-Mart supervisors watched us perform the work, and Wal-Mart nonetheless did not let us clock in until after the work was completed.

14. I want to be paid for all the time I spent completing required job duties off-the-clock prior to the start of my regularly scheduled shift. When I agreed to work for Wal-Mart, I agreed to be paid my regular or applicable overtime rate for each hour that I performed work activities. I never agreed to work for free. By forcing me to complete my pre-shift work activities off-the-clock, Wal-Mart has required me to work without receiving the wages that were agreed upon when I took this job.

I have read the forgoing statement consisting of this page and three (3) others and declare under the laws of the United States of America and the State of Nevada that the foregoing is true and correct.

Executed this 22 day of October 2021, in Sparks, Nevada.




Donna Karsten