Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
Joshua R. Hendrickson, Nev. Bar No. 12225
joshh@thiermanbuck.com
**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiff*
*and the Putative Classes*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTOPHER NELSON, on behalf of himself and all others similarly situated, | Case No.: 3:21-cv-00066-MMD-CLB |
| Plaintiff, | **DECLARATION OF MONICA SCHULZE** |
| vs. | |
| WAL-MART ASSOCIATES, INC., and DOES 1 through 50, inclusive, | |
| Defendant(s). | |

I, Monica Schulze, hereby declare and state as follows:

1.     I am over the age of eighteen. I am a current resident of Wadesboro, North Carolina.

2.     I have personal knowledge of the facts and circumstances set forth in this declaration. If I was called as a witness, I would and could competently testify to the matters set forth herein.

3.     I have been working for Wal-Mart as a non-exempt hourly paid warehouse worker in Pageland, South Carolina since in or around April 2018 ago to the present.

DocuSign Envelope ID: 268A6C89-D6AE-402D-9EB2-252385 12F1C8

4.     When I was first hired, I understood I would be paid the agreed upon hourly rate for all work activities I performed for Wal-Mart. I am currently making approximately $27.90 per hour for my work in the warehouse.

5.     I am regularly scheduled to work eleven hours a day, three days per week, from 4:30 a.m. to 4 p.m. We were also scheduled for an unpaid half-hour lunch. While my regular schedule is usually less than 40 hours per week, I sometimes work up to 40 hours or more in a workweek, not including off-the-clock work. Wal-Mart kept track of my hours worked on-the-clock so they would have a record of all the hours that I was clocked-in to their timekeeping system.

6.     Wal-Mart's food distribution warehouses are divided into "dry" and "cold" sections. I work in both the dry and cold sections of the warehouse. I work the majority of the time in the cold section as a Loader, but I also work around one day per week in the dry section as an Order Filler.

7.     Up until this summer, Wal-Mart did not let us clock in to begin our shift until two (2) minutes before our scheduled shift time. In or around July of 2021, Wal-Mart changed its policies and practices and began allowing employees, including me, to clock in up to five (5) minutes before our scheduled shift time. Upon information and belief, I believe that Wal-Mart made the change in response to this lawsuit. However, Wal-Mart still requires that we be ready to work with all equipment at the start of our shift, and even with the expanded clock-in period, we still have to get our equipment and put on our personal protective equipment (PPE)—i.e., freezer gear—off-the-clock prior to our shift. Also, despite changing its policies, Wal-Mart never paid us any wages or otherwise compensated us for all the time we have already spent working off-the-clock prior to their change in policy.

8.     Regardless of whether we are working in the dry or cold section of the warehouse, Wal-Mart requires all non-exempt hourly paid food distribution warehouse employees to be at our assigned station and ready to work at the start of our regularly scheduled shift. Wal-Mart does not allow us to clock-in to the timekeeping system until five (5) minutes—previously two (2) minutes—before our scheduled shift start time. In order to be ready to work at the shift start

time, and before clocking in, Wal-Mart requires us to complete work activities off-the-clock without compensation prior to the start of our shift.

9.      For shifts that I work in the dry section as an order filler, I am first required to retrieve required equipment, such as a headset, Quick-Pick Remote (QPR), and pallet jack. I am required to scan my employee badge at the control window in order to check out the electronic equipment, and upon information and belief, I believe that Wal-Mart maintains an electronic record of the times that I check out this equipment prior to the start of my shift. The equipment that I pick up at the beginning of the day is necessary for me to do my job, and I would not be able to do my job without it. All hourly paid dry section warehouse workers in my position use this equipment throughout the workday to haul and move products as well as to inventory and label products for ultimate distribution to Wal-Mart's retail stores. If we didn't have the equipment, we would not know what products need to go where, would not know where products are located, would not be able to track where the products are or where they are going, and we would not even be able to move the products since they are located on large pallets that we can't move without the pallet jack.

10.     I estimate that I regularly retrieve my equipment approximately fifteen (15) minutes prior to my scheduled shift (or more, before they changed the clock-in procedure) for each and every day that I work in the dry section, so that I have sufficient time to (i) check out the equipment and (ii) proceed to my station for my start-up meeting at the start of my shift. For example, since my scheduled shift starts at 4:30 a.m., I regularly arrive to the warehouse shortly after 4:00 a.m., pick up equipment that I keep in my locker around 4:10 a.m., check out the remaining electronic portion of my equipment at Control, log in to the program on my headset around 4:20-4:22, and clock in around 4:25 a.m.—the maximum allowed five (5) minutes before the start of my scheduled shift at 4:30 a.m. This process looks very similar for my work in the cold section as well. Wal-Mart does not compensate us for the time spent performing this work. This work is in addition to my regularly scheduled time, and as a result I have worked overtime over 40 hours in a week in some workweeks. Upon information and belief and through my own observations, other hourly paid Order Filler employees who I work with also work overtime off-

the-clock prior to the start of their shifts for Wal-Mart performing the same or similar work as described above.

11.     For shifts that I work in the cold section as a Loader, I am similarly required to retrieve required equipment, such as a pallet jack with on board computer screen and scanning gun, prior to the start of my shift. As with my work on the dry section, this equipment is necessary for me to do my job, and I would not be able to do my job without it. In addition, when I work in the cold section, I am required to put on personal protective equipment (PPE)—i.e., freezer gear—prior to the start of my regularly scheduled shift. The cold section is the freezer/refrigerator section of the food warehouse where freezer and refrigerated items are distributed. Upon information and belief and through my own observations, Wal-Mart requires all employees who work in the cold section to wear "cold store clothing" or "freezer wear" as PPE to prevent workplace illness and injury due to the cold environment. Specifically, Wal-Mart requires me and all other employees who work in the cold section to don the same or similar PPE prior to the start of our respective shifts: RefrigiWear insulated bibs; RefrigiWear thermal jacket; Thermal hooded sweatshirt; Stocking hat; and Wool socks. Because of the low temperatures, cold section warehouse workers such as myself and other similarly situated employees cannot perform our jobs safely and/or effectively without donning this PPE.

12.     I estimate that it regularly takes me approximately fifteen (15) minutes before my scheduled shift (or more, before they changed the clock-in procedure) to (i) pick up my required equipment, (ii) don my PPE and (iii) proceed to my station for my start-up meeting at the start of my shift, all of which has to be completed before clocking in. Wal-Mart does not compensate us for the time spent performing this work. This work is in addition to my regularly scheduled time, and as a result I have worked overtime over 40 hours in a week in some workweeks. Upon information and belief and through my own observations, other hourly paid employees who I work with also work overtime off-the-clock prior to the start of their shifts for Wal-Mart performing the same or similar work as described above.

13.     Upon information and belief and through my own observations, Wal-Mart is aware that its non-exempt, hourly paid warehouse workers were performing the work described

- 4 -
DECLARATION OF MONICA SCHULZE

above off-the-clock without compensation prior to the start of our shifts because Wal-Mart required all employees to perform this work, Wal-Mart supervisors watched us perform the work, and Wal-Mart nonetheless did not let us clock in until after the work was completed.

14. I want to be paid for all the time I spent completing required job duties off-the-clock prior to the start of my regularly scheduled shift. When I agreed to work for Wal-Mart, I agreed to be paid my regular or applicable overtime rate for each hour that I performed work activities. I never agreed to work for free. By forcing me to complete my pre-shift work activities off-the-clock, Wal-Mart has required me to work without receiving the wages that were agreed upon when I took this job.

I have read the forgoing statement consisting of this page and four (4) others and declare under the laws of the United States of America and the State of North Carolina that the foregoing is true and correct.

Executed this 22nd day of October 2021, in Wadesboro, North Carolina.



Monica Schulze

DECLARATION OF MONICA SCHULZE