UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CHRISTOPHER NELSON, | Case No. 3:21-cv-00066-MMD-CLB |
| Plaintiff, | |
| v. | ORDER |
| WAL-MART ASSOCIATES, INC., | |
| Defendant. | |

**I.   SUMMARY**

Plaintiff Christopher Nelson, on behalf of himself and other similarly situated individuals, sued Defendant Wal-Mart Associates, Inc., for failing to pay employees for pre-shift activities and labor. (ECF No. 14 at 4-8.) Before the Court is Defendant's motion to dismiss (ECF No. 16 ("Motion")) the Amended Complaint (ECF No. 14 ("FAC"))[1] under Federal Rule of Civil Procedure ("FRCP") 12(b)(6). (ECF No. 16 at 1-2.) Because Nelson has sufficiently pled the majority of his claims and the Court declines to deviate from Nevada Supreme Court precedent, and as further explained below, the Court will grant in part and deny in part the Motion.

**II.   BACKGROUND**

The following allegations are adapted from the FAC unless otherwise noted. (ECF No. 14.)

Nelson is a non-exempt hourly employee of Defendant's food distribution warehouse in Sparks, Nevada. (*Id*. at 4.) The warehouse is divided into a "Dry" Section and "Cold" Section. (*Id*.) Nelson was a former processor in the Cold Section, where all of Defendant's frozen and refrigerated items are distributed, and currently works as a

---

[1]Nelson filed a response to the Motion (ECF No. 22) and Defendant filed a reply (ECF No. 25).

processor in the Dry Section. (*Id*. at 4, 6.) He works four shifts per week, for ten paid hours per shift. (*Id.* at 4.)

Nelson alleges that Defendant requires all Dry Section employees to be prepared at the start of their shift time but does not permit them to clock in until immediately before their shift. (*Id*.) In preparation for their shift, employees must check out and bring back a mobile scanner and printer from Defendant's system control window, which takes approximately 15 minutes. (*Id*. at 5.) Nelson maintains that the scanner and printer are "integral and indispensable" to his job since Dry Section workers need the equipment to label and take inventory of Defendant's products. (*Id*.) Nelson alleges that he and other similarly situated workers are not compensated for this pre-shift activity, which amounts to around one hour per workweek or $33.53 of overtime pay for Nelson. (*Id*. at 5-6.)

Nelson alleges that Defendant similarly requires all Cold Section workers to be prepared at the start of their shift but does not permit them to clock in until immediately before their shift. (*Id*. at 6.) In preparation for their shift, Defendant requires Cold Section employees to put on personal protective equipment ("PPE") for safety reasons due to the cold working environment. (*Id*.) According to Nelson, the PPE includes RefrigiWear insulated bibs, a RefrigiWear thermal jacket, a thermal hooded sweatshirt, a stocking hat, and wool socks. (*Id*. at 6-7.) Nelson alleges that the PPE is "integral and indispensable" to the job of a Cold Section worker since they "cannot perform [their] job safely and/or effectively without donning" the apparel. (*Id*. at 7.) Nelson estimates that the process of donning the PPE takes 15 minutes per shift and employees are not compensated for this pre-shift activity, which amounts to around one hour per workweek or $33.90 of overtime pay for Nelson. (*Id*. at 7-8.)

Nelson subsequently filed this collective and class action, asserting the following claims in the FAC: (1) failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"); (2) failure to pay minimum wages in violation of the Nevada Constitution; (3) failure to pay wages for all hours worked in violation of Nevada Revised

Statute ("NRS") § 608.140 and § 608.016; (4) failure to pay overtime wages in violation of NRS § 608.140 and § 608.018; and (5) failure to timely pay all wages due and owing upon termination pursuant to NRS § 608.140 and §§ 608.020-608.050. (*Id*. at 11-15.) Defendant then filed the Motion,[2] requesting dismissal of the FAC under Rule 12(b)(6). (ECF No. 16.)

## III.     LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court of the United States clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at

---

[2]Defendant previously filed a motion (ECF No. 11) to dismiss Nelson's original complaint (ECF No. 1-2), which the Court will deny as moot.

678. Where the complaint does not permit the Court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id*. at 679 (alteration in original) (quotation marks and citation omitted). That is insufficient. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570. Dismissal of a complaint without leave to amend is only proper when it is clear the complaint could not be saved by any amendment. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016); *see also* Fed. R. Civ. P. 15(a)(2) (instructing district courts to "freely give leave" to amend).

## IV.  DISCUSSION

The Court first addresses Defendant's arguments that are premised on the Nevada Supreme Court's ruling in *Neville v. Eighth Judicial District Court*, 406 P.3d 499 (Nev. 2017). Defendant's *Neville* arguments concern dismissal of Nelson's state-law claims asserted under NRS §§ 608.140, 608.016, 608.018, and 608.020-608.050. The Court then examines Defendant's non-*Neville* claims,[3] which include Nelson's minimum wage claim under the Nevada Constitution, his claim for wages due upon termination under NRS § 608.140 and §§ 608.020-608.050 because Nelson is a current employee, and his FLSA claim for unpaid pre-shift activities in the Cold Section. Because the Court declines to deviate from *Neville* and because Nelson has pled facially plausible claims, the Court will deny in part and grant in part Defendant's Motion.

///

///

---

[3]In the Motion, Defendant also argues that dismissal of Nelson's FLSA and NRS § 608.018 claims are appropriate because Nelson failed to allege that the "purported dry and cold section tasks took place *prior* to clocking in for work." (ECF No. 16 at 13.) However, the Court is unpersuaded since it is clear from the factual allegations in Nelson's FAC that the Cold and Dry Section activities occurred before the start of his shift and that he was not compensated for the activities. (ECF No. 14 at 4-8.) The Court therefore declines to dismiss the claims on this ground. *See Iqbal*, 556 U.S. at 678.

A. ***Neville* Arguments for NRS §§ 608.140, 608.016, 608.018, and 608.020-608.050**

Most of Defendant's Motion is predicated on its belief that the Nevada Supreme Court erred in *Neville*. Accordingly, Defendant argues that this Court should deviate from *Neville*'s holding and find that Nelson does not have a private right of action under NRS §§ 608.140, 608.016, 608.018, 608.020-608.050. (ECF No. 16 at 6-9.) Nelson counters that the Court should follow the holding in *Neville*, which expressly found that Nevada employees have a private right of action to recover unpaid wages under those statutes. (ECF No. 22 at 2.) The Court agrees with Nelson.

The Court declines to deviate from the Nevada Supreme Court on a Nevada state-law issue. The United States Supreme Court has long held that "the highest court of the state is the final arbiter of what is state law" and when the state's highest court has spoken, "its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940) (citing *Wichita Royalty Co. v. City Nat'l Bank of Wichita Falls*, 59 306 U.S. 103, 107 (1939)). Here, Defendant asks the Court to dismiss Nelson's state-law claims because the Nevada Supreme Court held pre-*Neville* that the Nevada Labor Commissioner enforced the state's labor laws and there was no private right of action under NRS § 608.160. (ECF No. 16 at 6-9.) *See Baldonado v. Wynn Las Vegas*, LLC, 194 P.3d 96, 98 (Nev. 2008). However, the Nevada Supreme Court was clear in *Neville*—its most recent decision on this issue—that "NRS [§] 608.140 explicitly recognizes a private cause of action for unpaid wages" and allowed the plaintiff to pursue his claims under NRS §§ 608.016, 608.018, and 608.020-608.050—the same statutes under which

Nelson is asserting his claims in this action. (ECF No. 14 at 13-16.) *See Neville*, 406 P.3d at 500-01.[4]

In the Motion, Defendant also cites to pre-*Neville* decisions from this District as support that Nelson and other similarly situated individuals do not have a private right of action. (ECF No. 16 at 8-9.) However, Defendant notably neglects to include the numerous post-*Neville* decisions in this District, which have consistently recognized and adopted the Nevada Supreme Court's holding. *See Lewis v. Casa di Amore LLC*, Case No. 2:15-cv-01368-RFB-PAL, 2018 WL 4031605, at *3 (D. Nev. Aug. 23, 2018); *Sargent v. HG Staffing, LLC*, Case No. 3:13-cv-00453-LRH-GWF, 2019 WL 1117905, at *2 (D. Nev. Mar. 8, 2019); *Buchanan v. Watkins & Letofsky, LLP.*, Case No. 2:19-cv-00226-GMN-VCF, 2019 WL 3848785, at *3 (D. Nev. Aug. 15, 2019). Because Nevada's highest court, the "final arbiter," has already spoken on this state-law issue, the Court is bound to follow *Neville*. *See West*, 311 U.S. at 236.

Defendant also insinuates that, based on the plain language of NRS § 608.140, Nelson and other similarly situated individuals may only bring a private right of action for breach of contract or Nelson must allege the existence of an enforceable employment agreement first—which he failed to do in the FAC.[5] (ECF No. 16 at 10-11.) The Court is unpersuaded. The Nevada Supreme Court did not articulate such stringent requirements in *Neville*. Instead, the Nevada Supreme Court broadly held that "the Legislature intended to create a private cause of action for unpaid wages pursuant to NRS [§] 608.140" and that "NRS [§] 608.140 explicitly recognizes a private cause of action for unpaid wages." *Neville*, 406 P.3d at 500, 504.

---

[4]The Nevada Supreme Court also recognized and reiterated the *Neville* holding in 2020. *See HG Staffing, LLC v. Second Judicial Dist. Ct.*, 462 P.3d 687 (Nev. 2020) (stating that the Court held in *Neville* that "exhaustion of administrative remedies is not required before filing an unpaid-wage claim in district court").

[5]Defendant further argues that dismissal is proper because Nelson failed to make a demand for fees at least five days before he initiated this action, as required by NRS § 608.140. (ECF No. 16 at 11.) However, this is a remedy issue that will be resolved upon a finding of liability and is not a basis for complete dismissal of Nelson's state-law claims.

For the aforementioned reasons, the Court rejects Defendant's arguments and denies the Motion as to Nelson's claims under NRS §§ 608.140, 608.016, 608.018, and 608.020-608.050.

### B.     Minimum Wage Claim Under the Nevada Constitution

Defendant next argues that the Court should dismiss Nelson's claim under the Minimum Wage Amendment ("MWA") of the Nevada Constitution because his hourly rate does not fall below the state minimum. (ECF No. 16 at 12-13, 15-16.) Nelson counters that he and similarly situated employees did not receive *any* compensation for their pre-shift activities, in violation of the MWA, and Defendant's argument is incorrectly premised on Nevada's adoption of FLSA's "workweek requirement" for calculating the minimum wage. (ECF No. 22 at 7.) The Court agrees with Nelson.

To start, Defendant essentially asks the Court to apply FLSA's workweek requirement to Nelson's Nevada Constitution claim. (ECF Nos. 16 at 13, 15, 22 at 7, 25 at 6-7.) Under FLSA's calculation scheme, there is no violation "[i]f the total wage paid to an employee in any given workweek divided by the total hours worked that week equals or exceeds the applicable minimum wage." *Sullivan v. Rivera Holdings Corp.*, Case No. 2:14-cv-00165-APG-VCF, 2014 WL 2960303, at *1 (D. Nev. June 30, 2014); *see also Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999). Defendant suggests that because Nelson's normal hourly wage is more than twice the required minimum in Nevada, his average hourly pay per workweek, including his pre-shift activities, does not fall below Nevada's minimum wage.[6] (ECF No. 16 at 12-13, 15-16.) Since the Nevada Supreme Court has not directly addressed whether it adopts the same calculation standard that the FLSA uses, the Court will "predict how the highest

---

[6]Defendant refers to Nevada's minimum wage rate in the Motion. (ECF No. 16 at 15.) The Court notes that the state's current minimum wage rate is $8.75 per hour for employees to whom health care benefits have been offered and $9.75 per hour for all other employees. *See State of Nevada Minimum Wage 2021 Annual Bulletin*, Office of the Labor Commissioner, https://labor.nv.gov/uploadedFiles/labornvgov/content/Employer/2021%20Minimum%20Wage%20Bulletin%2003.24.2021.pdf (last visited Feb. 7, 2022).

state court would decide the [state law] issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Kaiser v. Cascade Capital, LLC*, 989 F.3d 1127, 1131-32 (9th Cir. 2021) (citations omitted).

Defendant primarily relies on the Nevada Supreme Court's prior decision in *Terry v. Sapphire Gentlemen's Club* to argue that Nevada's laws should be read in parallel with the FLSA, absent conflicting language. (ECF No. 25 at 3, 6-7.) *See* 336 P.3d 951, 955 (Nev. 2014). However, *Terry* only addressed FLSA's Economic Realities Test—an entirely different analysis—and the Court in *Terry* noted that the plaintiffs did not bring a minimum wage claim under the MWA. *See* 336 P.3d at 955. Therefore, the Court does not agree that this reasoning necessarily applies to Nevada's minimum wage calculation, and finds *Terry* is of limited application.

Defendant also cites to Nevada Administrative Code ("NAC") § 608.115 for support, which provides that minimum wage is calculated by "the amount paid to an employee in a pay period" divided by "the number of hours worked by the employee during the pay period"—thereby mirroring FLSA's language. (ECF No. 25 at 6.) *See* Nev. Admin. Code § 608.115(2). However, NAC § 608.115 actually undermines Defendant's argument, since the provision expressly exempts hourly workers like Nelson and the other Opt-in Plaintiffs from the calculation scheme. (ECF No. 14 at 4.) *See* Nev. Admin. Code § 608.115(2). Moreover, NAC § 608.115 explicitly states that an employer, like Defendant, must pay an employee for "all time worked by the employee at the direction of the employer, including time worked by the employee that is *outside* the scheduled hours of work of the employee"—which Defendant allegedly failed to do here since Nelson was not compensated for his pre-shift activities. *See* Nev. Admin. Code § 608.115(1) (emphasis added). Therefore, the Court is unpersuaded that Nevada law permits averaging unpaid overtime with compensated regularly scheduled work to provide cover for employers who do not pay minimum and overtime wages.

The Court also finds that Nelson sufficiently pled his minimum wage claim under the Nevada Constitution. The MWA explicitly requires employers to pay employees a wage of not less than the hourly minimum rate. *See* Nev. Const. art. 15, § 16. Despite Defendant's suggestions to the contrary, the Nevada Supreme Court acknowledged that the MWA "provides [even] broader minimum wage coverage than that offered by NRS Chapter 608" and the provision "reflects voters' wish that more, not fewer, persons would receive minimum wage protections." (ECF Nos. 16 at 3, 16, 25 at 3, 5.) *Doe Dancer I v. La Fuente, Inc.*, 481 P.3d 860, 872 (Nev. 2021) (citations and quotation marks omitted). In the FAC, Nelson alleges that he and other similarly situated individuals were paid $0 or *no minimum wage at all* for the pre-shift activities or the extra hours they worked prior to the start of their shifts. (ECF No. 14 at 12-13.) Nelson maintains that these extra hours were in excess of his scheduled 40 hours per week and provided the Court with his specific work schedule and paystub records. (*Id*. at 5-8, 20-21, 23-24.) Nelson has therefore pled enough facts in the FAC for the Court to draw a reasonable inference that Defendant violated the MWA. *See Iqbal*, 556 U.S. at 678.

Accepting Nelson's allegations as true, and when viewed in conjunction with MWA's broad protections and the Court's rejection of the FLSA standard, the Court finds that Nelson has pled a facially plausible claim that Defendant's non-payment of the pre-shift activities violates the Nevada Constitution. Nelson may therefore proceed with his MWA minimum wage claim, and the Court denies Defendant's Motion as to this claim.

In the Motion, Defendant also argues that the Court should dismiss Nelson's claim under NRS § 608.016 and NRS § 608.140 because he "does not allege he is owed for unpaid, straight time worked—*i.e.*, for work performed *before* he reached forty (40) hours worked in a workweek." (ECF No. 16 at 12.) However, NRS § 608.016 requires an employer to pay an employee "wages for *each* hour the employee works," and Nelson alleged that Defendant failed to pay him and other similarly situated employees for pre-shift activities that exceeded their scheduled 40 hours per week.

(ECF No. 14 at 5-8, 13-14.) He also provided the Court with his work hours for a given pay period and included records of his paystubs as support of the non-compensation. (*Id*. at 5-8, 20-21, 23-24.) Thus, Nelson has sufficiently pled his NRS § 608.016 claim.

### C. Unpaid Wages Due Upon Termination Under NRS §§ 608.020-608.050

Nelson has not established that he or any of the three Opt-in Plaintiffs have current standing to bring a claim under NRS §§ 608.020-608.050. Defendant argues, in part, that dismissal of Nelson's claim under NRS §§ 608.020-608.050 is appropriate because Nelson is still employed by Defendant and is not an appropriate class representative. (ECF No. 16 at 3, 15.) Nelson counters, in part, that the Court should not dismiss the claim in the interest of judicial economy since "former employees will become part of this case" once the Court "certifies this case as either a collective action under the FLSA or a class action under [FRCP] 23." (ECF No. 22 at 6-7.) The Court agrees with Defendant.

Sections 608.020 to 608.050 of the NRS address unpaid wages and compensation for employees who resign, quit, or are terminated from their jobs, and outline penalties for employers who fail to pay the former employees upon their termination or discharge. However, Nelson, the Party Plaintiff, and the three Opt-in Plaintiffs are all currently employed by Defendant. (ECF Nos. 14 at 4, 37 at 7-8.) They accordingly do not have standing to bring the claim on behalf of former employees and may not serve as class representatives. Since Nelson has failed to establish this "threshold issue" of standing, the Court grants Defendant's Motion as to Plaintiff's NRS §§ 608.020-608.050 claim and dismisses this claim without prejudice. *See Lierboe v. State Farm Mutual Auto. Ins. Co*., 350 F.3d 1018, 1022 (9th Cir. 2003) (noting that "standing is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue"). However, Plaintiffs may seek amendment if an appropriate class representative, who can properly represent the former employees, joins this lawsuit.

///

### D. Pre-Shift Cold Section Activities Under the FLSA

Defendant finally contends that the FAC lacks "factual allegations establishing that the donning of Cold Section PPE is compensable under the FLSA" and Nelson's allegations are "merely a recitation of the legal elements." (ECF No. 16 at 17.) Nelson counters that he sufficiently pled the claim because he alleged that donning the PPE is integral and indispensable to the job by "prevent[ing] workplace illness and injury" and is therefore compensable. (ECF Nos. 14 at 6-7, 22 at 10-12.) The Court agrees with Nelson.

The Ninth Circuit requires a "three-stage inquiry" to determine if certain activities are compensable under the FLSA. *See Bamonte v. City of Mesa*, 598 F.3d 1217, 1224 (9th Cir. 2010). First, the activity must be considered "work"; second, the activity must be "integral and indispensable" to the principal work performed; and, third, the activity must not be *de minimus*. *Id*. (citation omitted). A preliminary or postliminary activity is compensable if it is integral and indispensable to an employee's principal activities, meaning "if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing Sol., Inc. v. Busk*, 574 U.S. 27, 33 (2014).

Accepting Nelson's allegations as true, Nelson has stated a plausible FLSA claim for the Cold Section activities. (ECF No. 14 at 6-8, 11-12.) In the FAC, Nelson sufficiently pled that donning the PPE prior to his shift was integral and indispensable to working in the freezer/refrigerator section of Defendant's warehouse because the PPE "prevent[s] workplace illness and injury due to the cold environment." (*Id*. at 6.) *See Bamonte*, 598 F.3d at 1224 (citation omitted). He alleges that the PPE is necessary for a Cold Section employee to "perform his or her job safely and/or effectively." (ECF No. 14 at 7.) *See Busk*, 574 U.S. at 33. Moreover, the RefrigiWear clothing that employees wear is specially and uniquely made for "helping cold storage employees stay warm and protected in the cooler and freezer while they work." (*Id*. at 7-8.) *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 897, 903 (9th Cir. 2003) (holding that employers are "required to

11

compensate its employees for the time it takes to change into required specialized protective clothing and safety gear"). However, according to Nelson, Cold Section employees are not compensated for the time it takes to don the PPE, which amounts to around 15 minutes per shift. (ECF No. 14 at 8.)

In sum, Nelson has included sufficient factual allegations in the FAC to state a facially plausible claim that donning the PPE is compensable under the FLSA. *See Iqbal*, 556 U.S. at 678-79. The Court therefore permits Nelson's FLSA Cold Section claim to proceed and denies Defendant's Motion as to this claim.

## V.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendant's Motion to Dismiss (ECF No. 16) the Amended Complaint (ECF No. 14) is granted in part and denied in part.

It is further ordered Defendant's Motion to Dismiss (ECF No. 11) the Original Complaint (ECF No. 1-2) is denied as moot.

DATED THIS 9th Day of February 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE