**THIERMAN BUCK LLP**
MARK R. THIERMAN, SB# 8285
JOSHUA D. BUCK, SB# 12187
LEAH L. JONES, SB# 13161
JOSHUA R. HENDRICKSON, SB# 12225
7287 Lakeside Drive
Reno, NV 89511
Tel: 775.284.1500
Fax: 775.703.5027
mark@thiermanbuck.com
josh@thiermanbuck.com
leah@thiermanbuck.com
joshh@thiermanbuck.com

ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CHRISTOPHER NELSON, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

WAL-MART ASSOCIATES, INC., and DOES 1 through 50, inclusive,

Defendant(s).

Case No. 3:21-cv-00066-MMD-CLB

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

*THIERMAN BUCK LLP*
*7287 Lakeside Drive*
*Reno, NV 89511*
*(775) 284-1500 Fax (775) 703-5027*
*Email info@thiermanbuck.com www.thiermanbuck.com*

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

COMES NOW Plaintiff CHRISTOPHER NELSON, on behalf of himself and all others similarly situated, and hereby moves the Court for Class Certification and Notice pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") on behalf of the following Classes of persons:

**Nevada Dry Section Class:** All non-exempt hourly paid food distribution warehouse employees who (i) were employed by Defendant in the State of Nevada at any time within 2 years from the filing of the original complaint in this action, (ii) worked in the dry section of the food distribution warehouse, and (iii) were required to retrieve a scanner, printer, or other electronic device, pre-shift.

**Nevada Cold Section Class:** All non-exempt hourly paid food distribution warehouse employees who (i) were employed by Defendant in the State of Nevada at any time within 2 years from the filing of the original complaint in this action, (ii) worked in the cold section of the food distribution warehouse, and (iii) were required to don cold storage personal protective equipment (PPE) pre-shift.

Further, Plaintiff seeks an Order from this Court (1) appointing Plaintiff Christopher Nelson as Class Representative of the respective Classes; (2) appointing Joshua D. Buck, Mark R. Thierman, Leah L. Jones, and Joshua R. Hendrickson, of Thierman Buck LLP as Counsel for the Classes; (3) directing the parties to meet and confer to draft a mutually agreeable notice to members of the Classes advising them of this action and their right to exclude themselves from the Classes.

Plaintiff's Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declarations filed in support of this Motion and all accompanying exhibits, pleadings, papers, and records on file herein, all matters upon which

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

judicial notice may be taken, any oral argument that may be presented, and upon such other matters the Court deems just and necessary.

DATED: August 17, 2022          Respectfully submitted,

**THIERMAN BUCK LLP**

/s/ *Joshua R. Hendrickson*
Mark R. Thierman
Joshua D. Buck
Joshua R. Hendrickson
Leah L. Jones

*Attorneys for Plaintiff*

**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff CHRISTOPHER NELSON, on behalf of himself and all others similarly situated, hereby seeks an order certifying the following classes of persons pursuant to Rule 23 of the Federal Rules of Civil Procedure:

**Nevada Dry Section Class:**   All non-exempt hourly paid food distribution warehouse employees who (i) were employed by Defendant in the State of Nevada at any time within 2 years from the filing of the original complaint in this action, (ii) worked in the dry section of the food distribution warehouse, and (iii) were required to retrieve a scanner, printer, or other electronic device, pre-shift.

**Nevada Cold Section Class:**   All non-exempt hourly paid food distribution warehouse employees who (i) were employed by Defendant in the State of Nevada at any time within 2 years from the filing of the original complaint in this action, (ii) worked in the cold section of the food distribution warehouse, and (iii) were required to don cold storage personal protective equipment (PPE) pre-shift.

In this case, Plaintiff alleges that Defendant WAL-MART ASSOCIATES, INC. ("Defendant" or "Walmart") has suffered and/or permitted Plaintiff and all other typical employees to perform compensable work without compensation. Specifically, Plaintiff alleges that he and all putative class members of the **Nevada Dry Section Class** were suffered or permitted to work off the clock and without compensation for the time it took them to retrieve equipment required to process goods within Defendant's Nevada warehouse (the "McCarran Facility") and proceed to their work station prior to the start of their shift. Likewise, Plaintiff alleges that he and all putative class members of the **Nevada Cold Section Class** were suffered or permitted to work off the clock and without compensation for the time it took them to don cold storage PPE and proceed to their work station prior to the start of their shift.

---

1

Ascertaining members of the classes can be systematically accomplished, with minimal human time and little capital investment, by referencing Defendant's Systems Assets scans ("BMAT reports") to identify the employees who were required to retrieve Personal Electronic Equipment for their assigned position (to determine members of the Nevada Dry Section Class), and by referencing Defendant's payroll data for all employees who worked in Defendant's cold section of the McCarran Facility during the relevant time frame, since Plaintiff alleges that all employees who worked in the cold section were required to don PPE prior to the start of their scheduled shift (to determine members of the Nevada Cold Section Class).

Once the Classes are certified, it will then become incumbent upon Plaintiff to convince a trier of fact that Defendant ***knew or should have known*** that Plaintiff and class members were performing compensable work prior to clocking in to begin their shifts. Plaintiff intends to introduce the following evidence of said knowledge: (i) representative employee testimony will indicate that Defendant and its agents witnessed employees perform the work prior to clocking in; (ii) Defendant and its agents monitored and regularly audited its employees' performance of the work; (iii) Defendant is in possession and control of electronic data (BMAT reports) that would give rise to this knowledge; (iv) representative employee testimony and written policies will indicate that Defendant and its agents allowed, approved, and/or required employees to perform the work off the clock; and/or (v) expert testimony exposing the scale and scope of the off-the-clock work.

If Plaintiff is successful in demonstrating the requisite knowledge component for compensability, Plaintiff and all Class Members will be entitled to recover damages, which will also be presented with representative sampling or actual damages, depending on the scope of the information produced by Defendant. If Plaintiff is not successful in convincing a trier of fact that Defendant knew or should have known about the off-the-clock work, all of Plaintiff's claims for compensation, both for himself and for all members of the Classes, will fail. In short, the claims of Plaintiff and all putative class members will rise or fall together. Accordingly, for

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

these reasons and all the reasons set forth more fully below, class certification is appropriate and should be granted.

## II.      PROCEDURAL HISTORY

Plaintiff CHRISTOPHER NELSON filed the original class and collective action complaint in this action in the First Judicial District Court of the State of Nevada, in and for the County of Storey, on December 23, 2020. (ECF No. 1-2.). Defendant filed its Notice of Removal on January 29, 2021 (ECF No. 1), and subsequently filed a Motion to Dismiss on March 31, 2021. (ECF No. 11). Plaintiff filed his First Amended Complaint on April 2, 2021, alleging five causes of action: (1) failure to pay overtime in violation of 29 U.S.C. § 207; (2) failure to pay minimum wages in violation of the Nevada Constitution; (3) failure to compensate for all hours worked in violation of NRS 608.140 and 608.016; (4) failure to pay overtime in violation of NRS 608.140 and 608.018; (5) failure to timely pay all wages due and owing in violation of NRS 608.140 and 608.020-.050. (ECF No. 14 (hereinafter, "FAC")). Plaintiff's allegations arise from Defendant's policies and practices of requiring Plaintiff and similarly situated employees to complete compensable work activities pre-shift without pay on behalf of two classes of employees under State law as well as the Fair Labor Standards Act ("FLSA").[1] *See* FAC, generally. Plaintiff filed this action as a hybrid class and collective action. Plaintiff's Motion for Circulation of Notice Pursuant to 29 U.S.C. § 216(b) is now fully briefed and pending before this Court.

Defendant re-filed its Motion to Dismiss Plaintiff's First Amended Complaint on April 16, 2021. (ECF No. 16). On February 9, 2022, this Court granted in part and denied in part Defendant's Motion to Dismiss. (ECF No. 45.) The Court dismissed Plaintiff's claims under NRS Sections 608.020-050 without prejudice, providing that: "Plaintiffs may seek amendment if an appropriate class representative, who can properly represent the former employees, joins this lawsuit." (*Id.* at 10.) The Court denied Defendant's motion on all other points.

---

[1] Plaintiff's federal claims are not at issue here. It is well-established that opt-out FRCP Rule 23 class claims may be brought within the same action as opt-in collective action claims. *See*, *e.g.*, *Busk v. Integrity Staffing Solutions, Inc*., 713 F.3d 525 (9th Cir. 2013).

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

This case is early in its procedural posture, and in contrast to most other class certification motions under Rule 23, Plaintiff is filing the instant motion prior to the close of discovery. Plaintiff propounded written discovery on Defendant on July 27, 2021.  Plaintiff propounded a deposition notice pursuant to Rule 30(b)(6) on May 14, 2022.  Defendant refused to produce any putative collective and/or class discovery and objected to the 30(b)(6) deposition that was noticed for June 22, 2022. Before engaging in the meet and confer process, the Parties attempted to engage in early case discussions that would lead to a potential resolution of this case, which necessitated the lengthy briefing schedule for the FLSA conditional certification motion, but these lofty goals proved fleeting. As a result, Plaintiff has recently had to rekindle the meet and confer process to compel certain collective and/or class discovery.

## III.   COMMON FACTS

### A.    Plaintiff Nelson and the Opt-In Plaintiffs

1.     Plaintiff Nelson has been employed by Defendant as a non-exempt hourly paid warehouse worker since on or about October 1, 2007 to the present. *See* Declaration of Christopher Nelson ("Nelson Dec.") at ¶ 3; *see also* ECF No. 14 (Operative Complaint), at ¶ 7. Plaintiff Nelson has worked as a Processor in both the dry and cold sections of Defendant's warehouse in Sparks, Nevada during the relevant period. *See* Nelson Dec. at ¶ 4; *see also* Operative Complaint, at ¶¶ 13-14. Plaintiff Nelson is regularly scheduled to work ten hours a day, four days per week, for a total of 40 hours in a workweek, not including time worked off-the-clock. *See* Nelson Dec. at ¶ 5; *see also* Operative Complaint, at ¶ 15.

2.     Opt-In Plaintiff Marcella Bostrom has been employed by Defendant as a non-exempt hourly paid warehouse worker since on or about October 2017 to the present. *See* Declaration of Marcella Bostrom ("Bostrom Dec.") at ¶ 3. Opt-In Plaintiff Bostrom has worked in the receiving department of the dry section and as an Order Filler in the dry section of Defendant's warehouse in Sparks, Nevada during the relevant period. *See* Bostrom Dec. at ¶ 4. Opt-In Plaintiff Bostrom is regularly scheduled to work ten hours a day, four days per workweek, for a total of 40 hours in a week, not including time worked off-the-clock. *See* Bostrom Dec. at ¶ 5.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

3.      Opt-In Plaintiff Donna Karsten has been employed by Defendant as a non-exempt hourly paid warehouse worker since on or about July 22, 2006 to the present. *See* Declaration of Donna Karsten ("Karsten Dec.") at ¶ 3. Opt-In Plaintiff Karsten has worked as a Hauler in the dry section and has also worked in the cold section of Defendant's warehouse in Sparks, Nevada during the relevant period. *See* Karsten Dec. at ¶¶ 4, 6. Opt-In Plaintiff Karsten is regularly scheduled to work ten hours a day, four days per week, for a total of 40 hours in a workweek, not including time worked off-the-clock. *See* Karsten Dec. at ¶ 5.

4.      Opt-In Plaintiff Monica Schulze has been employed by Defendant as a non-exempt hourly paid warehouse worker since on or about April 2018 to the present. *See* Declaration of Monica Schulze ("Schulze Dec.") at ¶ 3. Opt-In Plaintiff Schulze has worked in the dry section as a Loader and has worked in the cold section as an Order Filler in Defendant's warehouse in Pageland, South Carolina during the relevant period. *See* Schulze Dec. at ¶¶ 3, 6. Opt-In Plaintiff Schulze is regularly scheduled to work eleven hours a day, three days per week, although she sometimes works up to 40 hours or more in a workweek, not including time worked off-the-clock. *See* Schulze Dec. at ¶ 5.

**B.      Common Allegations That Defendant Suffered and/or Permitted Plaintiff and Opt-In Plaintiffs to Work Without Compensation**

**i.      Summary of Uncompensated Off-The-Clock Work**

5.      As set forth in the operative complaint and confirmed by declaration testimony, Wal-Mart's food distribution warehouses are divided into "dry" and "cold" sections. *See* Operative Complaint, at ¶ 12; *see also* Nelson Dec. at ¶ 6; Bostrom Dec. at ¶ 6; Karsten Dec. at ¶ 6; Schulze Dec. at ¶ 6. Regardless of which section of the warehouse an employee is assigned to work, all non-exempt hourly paid warehouse employees were required to have physical possession of all equipment, gear and required PPE supplied by Defendant and kept on-site necessary to perform their work prior to clocking in and attending a mandatory startup meeting. *See* Operative Complaint, at ¶ 16, 18, 22, 26, 27, 31; *see also* Nelson Dec. at ¶¶ 8-13; Bostrom Dec. at ¶¶ 8-11; Karsten Dec. at ¶¶ 8-12; Schulze Dec. at ¶¶ 8-12. All employees who worked in the Dry Section had to retrieve a scanner, printer, or other electronic devices from a central

location where they were being re-charged before clocking in and beginning their shift. *See* Operative Complaint, at ¶ 12; *see also* Nelson Dec. at ¶ 9; Bostrom Dec. at ¶ 9; Karsten Dec. at ¶ 9; Schulze Dec. at ¶ 9. And all employees who worked in the Cold Section had to don PPE on site before clocking in and beginning their shift. *See* Nelson Dec. at ¶¶ 12-13; Bostrom Dec. at ¶ 11; Karsten Dec. at ¶ 11; Schulze Dec. at ¶ 11.

6.    Because this work was in addition to the warehouse workers' regularly scheduled time, the employees consequently worked overtime over 40 hours in a workweek receiving any overtime premium or compensation whatsoever for their work. *See* Nelson Dec. at ¶¶ 10; 13; Bostrom Dec. at ¶ 10; Karsten Dec. at ¶ 10; Schulze Dec. at ¶¶ 10, 12.

**ii.    Dry Section Pre-Shift Activities**

7.    Defendant requires Plaintiff and all other similarly situated employees to be ready to work at shift start time for work in the dry section. *See* Nelson Dec. at ¶ 8; Bostrom Dec. at ¶ 8; Karsten Dec. at ¶ 8; Schulze Dec. at ¶ 8. However, Defendant does not allow Plaintiff and all other similarly situated employees to clock-in to the timekeeping system until immediately before their scheduled shift start time. *See* Nelson Dec. at ¶ 8; Bostrom Dec. at ¶ 8; Karsten Dec. at ¶ 8; Schulze Dec. at ¶ 8.

8.    In order to be ready to work at the shift start time in the dry section, Defendant required that Plaintiff and all other similarly situated employees first retrieve whatever equipment is needed for their assignment prior to the start of their shift. *See* Nelson Dec. at ¶ 9; Bostrom Dec. at ¶ 9; Karsten Dec. at ¶ 9; Schulze Dec. at ¶ 9. For certain electronic equipment, Plaintiff and similarly situated employees scanned their employee badges at the control window to check out the equipment, thereby generating a data trail that may be used to verify and corroborate Plaintiff and Opt-In Plaintiffs' allegations concerning the performance and amount of off-the-clock work. *See* Nelson Dec. at ¶ 9; Bostrom Dec. at ¶ 9; Karsten Dec. at ¶ 9; Schulze Dec. at ¶ 9.

9.    The equipment that Plaintiff and all other similarly situated employees are required to pick up at the beginning of the day is integral and indispensable to the job of a warehouse worker in the dry section of Defendant's warehouses. *See* Nelson Dec. at ¶ 9;

**THERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

Bostrom Dec. at ¶ 9; Karsten Dec. at ¶ 9; Schulze Dec. at ¶ 9. Plaintiff and all other similarly situated employees use this equipment throughout their workday to haul and move products as well as to inventory and label products for ultimate distribution to Wal-Mart's retail stores. *See* Nelson Dec. at ¶ 9; Bostrom Dec. at ¶ 9; Karsten Dec. at ¶ 9; Schulze Dec. at ¶ 9.

10.    Despite the integral and indispensable nature of the equipment to the job of a warehouse worker in the dry section, Defendant does not compensate Plaintiff or any other similarly situated employee for the time it takes to retrieve these items before their scheduled shifts. *See* Nelson Dec. at ¶ 10; Bostrom Dec. at ¶ 10; Karsten Dec. at ¶ 10; Schulze Dec. at ¶ 10.

11.    Plaintiff and Opt-In Plaintiffs estimate that warehouse workers in the dry section of the warehouse regularly retrieve their equipment approximately ten to fifteen (10-15) minutes prior to their scheduled shift so that they have sufficient time to (i) check out the equipment and (ii) proceed to their station for their start-up meeting at the start of their shift. *See* Nelson Dec. at ¶ 10; Bostrom Dec. at ¶ 10; Karsten Dec. at ¶ 10; Schulze Dec. at ¶ 10.

### iii.    Cold Section Pre-Shift Activities

12.    As with the dry section, Defendant also requires Plaintiff and all other similarly situated employees to be ready to work at shift start time for work in the cold section. *See* Nelson Dec. at ¶ 8; Bostrom Dec. at ¶ 8; Karsten Dec. at ¶ 8; Schulze Dec. at ¶ 8. Again, however, Defendant does not allow Plaintiff and all other similarly situated employees to clock-in to the timekeeping system until immediately before their scheduled shift start time. *See* Nelson Dec. at ¶ 8; Bostrom Dec. at ¶ 8; Karsten Dec. at ¶ 8; Schulze Dec. at ¶ 8.

13.    In order to be ready to work at the shift start time in the cold section, Defendant requires that Plaintiff and all other similarly situated employees first retrieve all necessary equipment for their assigned workstation off-the-clock prior to the start of their shift, without compensation. *See* Nelson Dec. at ¶¶ 11, 13; Bostrom Dec. at ¶ 11; Karsten Dec. at ¶ 11; Schulze Dec. at ¶¶ 11, 12.

14.    In order to be ready to work at the shift start time in the cold section, Defendant further required Plaintiff and all other similarly situated employees to don personal protective

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

equipment (PPE)—i.e., freezer gear—prior to the start of their respective shifts. *See* Nelson Dec. at ¶ 12; Bostrom Dec. at ¶ 11; Karsten Dec. at ¶ 11; Schulze Dec. at ¶ 11.

15.     The cold section is the freezer/refrigerator section of the food warehouse wherein freezer and refrigerated items are distributed. respective shifts. *See* Nelson Dec. at ¶ 12; Bostrom Dec. at ¶ 11; Karsten Dec. at ¶ 11; Schulze Dec. at ¶ 11. Understandably, Defendant requires all employees who work in the cold section to wear "cold store clothing" or "freezer wear" as PPE to prevent workplace illness and injury due to the cold environment. respective shifts. *See* Nelson Dec. at ¶ 12; Karsten Dec. at ¶ 12; Schulze Dec. at ¶ 11. Therefore, Defendant requires Plaintiff and all other similarly situated employees to don the same or similar PPE prior to the start of their respective shifts:

- RefrigiWear insulated bibs;[2]
- RefrigiWear thermal jacket;
- Thermal hooded sweatshirt;
- Stocking hat; and
- Wool socks.

*See* Nelson Dec. at ¶ 12; Karsten Dec. at ¶ 12; Schulze Dec. at ¶ 11.

16.     Donning this PPE is integral and indispensable to the job of a warehouse worker in the cold section of Defendant's warehouses. *See* Nelson Dec. at ¶ 12; Karsten Dec. at ¶ 12; Schulze Dec. at ¶ 11. A cold section warehouse worker cannot perform his or her job safely

---

[2] RefrigiWear markets their PPE to cold storage employers and employees:

> Cold storage employees are dedicated to ensuring the proper care and storage of customers' products, which means a cold working environment no matter the season. RefrigiWear has spent the last 60 years helping cold storage employees stay warm and protected in the cooler and freezer while they work. We offer cold apparel like our iconic Iron-Tuff line and our stylish softshell options. We help you keep a professional look with embroidery services and stylish cooler and freezer gear that helps you master the cold. Whether it is jackets, pants, base layers, boots, or one of our many other products, RefrigiWear has the gear to keep cold storage employees protected from the cold.

*See* https://www.refrigiwear.com/view/cold-storage (last visited Dec. 2, 2020).

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

PLAINTIFF'S NOTICE AND MOTION FOR CLASS CERTIFICATION PURSUANT TO F.R.C.P. 23

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

and/or effectively without donning this PPE. *See* Nelson Dec. at ¶ 12; Karsten Dec. at ¶ 12; Schulze Dec. at ¶ 11.

17.     Despite the integral and indispensable nature of this PPE to the job of a warehouse worker in the cold section, Plaintiff and all other similarly situated employees were not compensated for the time they spent to don this PPE. *See* Nelson Dec. at ¶ 13; Bostrom Dec. at ¶ 11; Karsten Dec. at ¶ 11; Schulze Dec. at ¶ 12.

18.     Plaintiff and Opt-In Plaintiffs estimate that it regularly took warehouse workers in the cold section approximately fifteen (15) minutes prior to their scheduled shift to (i) pick up their required equipment, (ii) don their PPE and (iii) proceed to their station for their start-up meeting at the start of their shift, all of which had to be completed off-the-clock before clocking in. *See* Nelson Dec. at ¶ 13; Schulze Dec. at ¶ 12.

> ### iv.     Wal-Mart Knew its Warehouse Employees Were Performing Work Off-The-Clock But Failed to Either Stop or Pay for the Work.

19.     Plaintiff and all Opt-In Plaintiffs have attested that Wal-Mart was aware that its non-exempt, hourly paid warehouse workers were performing the work described above off-the-clock without compensation prior to the start of their shifts but that Wal-Mart nonetheless failed to stop the performance of the work or pay for the work. *See* Nelson Dec. at ¶ 14; Bostrom Dec. at ¶ 12; Karsten Dec. at ¶ 13; Schulze Dec. at ¶ 13.

20.     Defendant maintains written policies governing the performance of the work at issue and regularly monitors and audits its employees' performance of the work.[3] In particular, Defendant's First Hour Productivity ("FHP") Playbook mandates that "Start-up meetings will be standardized and actively tracked and measured by buildings to drive consistency." *See* Declaration of Joshua R. Hendrickson Dec. ("Hendrickson Dec."), Exhibit A ("Ex. A") at 688; 680 ("When First Hour Productivity Improvement elements are executed well, it will provide

---

[3] Indeed, apparently recognizing the errors of its ways, Wal-Mart has recently taken several steps to limit off-the-clock work pre-shift, including changing policies concerning where and when warehouse employees may clock in. *See* Nelson Dec. at ¶ 7; Bostrom Dec. at ¶ 7; Karsten Dec. at ¶ 7; Schulze Dec. at ¶ 7.

verifiable improvement and consistency across DCs.").

21.     For each facility, Defendant required its Operations Managers to "create Start-up Meeting Script that is specific and relevant for their area" to govern employee performance of startup activities, mandating that "Operations Managers will be responsible for the use and accuracy of the start-up scripts, and should review on a regular basis with their Area Managers." Ex. A at 695; 696 ("Script should be created, laminated, and stored near the start up location. Area managers should record when they start the meeting, and when they end the meeting. All content should be gathered and clear time limits placed on each segment.")

22.     Among other things, Defendant required its facilities to monitor and record employee "[t]ime to get Scanning Equipment." Ex. A at 716. Likewise, Defendant also required each facility to specifically address and track the "[t]ime to get 'Special' Equipment on (like Freezer Gear)." Ex. A at 716.

23.     Throughout its FHP Playbook, Defendant repeatedly emphasized the tight control that management must maintain over this work to standardize and streamline startup procedures at each facility:

> All management should constantly monitor to make sure expectations are being met. They should do this by:
> - Regular Audits of each role
>   - Use a stop watch to track, from a reasonable distance, random associates associated with that role
>     - You do not want to unduly influence observed associate by being overly obvious
>     - If issues identify, document, but don't immediately address.
>       - Make more observations, and determine of issues are one time, individual or systemic
>       - Then make appropriate plans to address (Ex. A at 717.)

24.     Defendant also maintains electronic records that may be used to verify and corroborate testimony regarding the performance and amount of off-the-clock work performed by Plaintiffs and putative class members, as well as Defendant's knowledge of and failure to either stop or pay for the work.

## IV.    LEGAL ARGUMENT

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

FRCP 23(a) provides that "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." To certify a class under FRCP 23(b), a court must find that common questions of fact or law predominate over questions affecting only individual members of the proposed class, and that a class action is the superior method for fairly and efficiently adjudicating the controversy. The FRCP 23(b)(3) inquiry has two prongs: predominance and superiority. *Lee v. Enter Leasing Co.-West, LLC,* 300 F.R.D. 466, 472-73 (D. Nev. 2014). The predominance prong "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.* 244 F.3d 1152, 1162 (9th Cir. 2001) (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 424, 623 (1997)). This inquiry often overlaps with the court's commonality inquiry under FRCP 23(a)(1). *See e.g., Schmidt v. Red Rock Fin. Servs., LLC,* No. 2:12-cv—1773-JCM-PAL, 2013 WL 5656085, at *3 (D. Nev. Oct. 15, 2013) (Mahan, J.). By contrast, the superiority prong requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1023 (9th Cir. 1998) (citation omitted). As demonstrated below, Plaintiff's proposed Classes meet all four criteria for FRCP 23(a) and the two criteria for FRCP 23(b)(3).

### A.    All Four FRCP 23(a) Criteria Are Met.

***The Class is so numerous that joinder of all members is impracticable.*** As a general rule, a putative class of forty or more will be found numerous. *See, e.g., Int'l Molders & Allied Workers' Local 164 v. Nelson,* 102 F.R.D. 457, 461 (N.D. Cal. 1983) (recognizing that a putative class of forty or more generally will be found 'numerous.'"). Here, Defendant has not yet provided a class list. However, Plaintiff understands and alleges that Defendant employs, and has employed, in excess of 1,000 Nevada Class Members within the applicable statute of limitations. Because Defendant is legally obligated to keep accurate payroll records, Plaintiff alleges that

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

Defendant's records will establish the identity and ascertainability of members of the Nevada Classes as well as their numerosity. Further, Defendant's BMAT records will confirm which employees were assigned Personal Electronic Equipment for use in their shift. It cannot be disputed that the proposed Classes that Plaintiff seeks to certify meet the numerosity requirement.

***There are questions of law or fact common to the Class.*** Certification is appropriate under the commonality prong when "there are questions of law or fact common to the class." FRCP 23(a)(2). "[I]t is not necessary that all question of law and fact be common." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). Commonality, thus, may be satisfied by a single common question of law or fact. *Id.* (stating that either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfies this criterion). As the Supreme Court recently explained in *Wal-mart Stores, Inc. v. Dukes,* class "claims must depend upon a common contention … That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).[4]

Here, the overarching common question at issue for all class members in all Classes is as follows:

> (1)     **Whether Defendant suffered and/or permitted non-exempt warehouse employees to perform work without compensation.** (If the answer to this question is in the affirmative,

---

[4] Federal courts throughout the nation continue, after the *Dukes* decision, to routinely certify and maintain Rule 23 wage-and-hour class actions based upon the common issue of an employer's policy that allegedly leads to unpaid time. *See, e.g., Espinoza v. 953 Associates LLC*, No. 10 CIV. 5517 SAS, 2011 WL 5574895 (S.D.N.Y. Nov. 16, 2011) (certifying issues of defendant's practice and policy regarding breaks, unpaid post-shift work activities, and company alteration of clock-in and clock-out times to match scheduled work times). Whether a question will drive the resolution of the litigation necessarily depends on the nature of the underlying legal claims that the class members have raised. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) *cert. denied*, 135 S. Ct. 2835 (2015); *Parsons v. Ryan,* 754 F.3d 657, 676 (9th Cir.2014) ("commonality cannot be determined without a precise understanding of the nature of the underlying claims.").

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

then the subsequent question is whether the pre-shift activities are compensable under Nevada law.)[5]

The answer to this question is capable of classwide determination via representative testimony. *See Jimenez*, 765 F.3d at 1167 ("Since *Dukes* and *Comcast* were issued, circuit courts including this one have consistently held that statistical sampling and representative testimony are acceptable ways to determine liability so long as the use of these techniques is not expanded into the realm of damages."). 29 U.S.C. § 785.11 succinctly explains this standard:

> Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time. (citing cases).

Plaintiff has demonstrated above that he intends to put forth common evidence demonstrating this knowledge. The evidence developed to date, as summarized herein, shows that Defendant had actual knowledge that this work was being performed but nonetheless failed to either stop or pay for the work. But at a minimum, Defendant had at least "inquiry notice" that Plaintiff and putative class members were performing work off the clock prior to the start of their shifts.[6] "[A]n employer's conduct shall be deemed to be in reckless disregard of the requirements of the Act, among other situations, if the employer should have inquired further

---

[5] Additionally, if Plaintiffs amend to re-assert their claims under NRS 608.020-050, another common question is whether members of the Nevada Classes who are former employees are entitled to continuation wages in the event they are successful in their underlying claims for compensation.

[6] Nevada follows the FLSA's "suffer or permit" standard; therefore, references to federal case law interpreting this standard are relevant to determining the same standard under state law. *See e,g.*, *Terry v. Sapphire/Sapphire Gentlemen's Club*, 336 P.3d 951, 956 (Nev. 2014) ("[W]e cannot say that there is any language in NRS 608.011 so "materially different" from that of 29 U.S.C. § 203(d) and (g) that it would caution this court against adopting the economic realities test to interpret the former*."); In re: Amazon.Com, Inc. Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 905 F.3d 387, 401 (6th Cir. 2018) ("In sum, Nevada law incorporates the federal definition of "work"").

**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry." 29 C.F.R. § 578.3(c)(3). An employer has "reason to believe" or constructive knowledge of uncompensated time when the employer should have discovered it in the exercise of due diligence. *See, e.g.*, *Craig v. Bridges Bros. Trucking* LLC, 823 F.3d 382, 388-89 (6th Cir. 2016); *Acosta v. Senvoy*, LLC, 2018 WL 3722210, at \*10 (D. Or. July 31, 2018). Despite having such inquiry notice, Defendant has not provided any evidence showing that it took affirmative action to assure compliance with FLSA's requirements. *Flores v. Velocity Express*, LLC, 250 F. Supp. 3d 468, 495 (N.D. Cal. 2017); *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003), aff'd, 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005) (affirming the district court's conclusion that the defendant acted willfully where "[the defendant] was on notice of its FLSA requirements, yet took no affirmative action to assure compliance with them"). An employer who fails to investigate potential FLSA violations based upon reasonable "inquiry notice" is charged with constructive knowledge as a matter of law. *Lillehagen v. Alorica, Inc*., 2014 WL 6989230 (C.D. Cal. Dec. 10, 2014); S*mall v. Univ. Med. Ctr.*, 2018 WL 3795238, at \*37 (D. Nev. Aug. 9, 2018).

For all of these reasons, the commonality requirement is satisfied for both of the Nevada Classes.

**The claims and defenses of the representative parties are typical of the claims or defenses of the Classes.** For typicality to exist, a class representative plaintiff must have claims "reasonably co-extensive with those of absent class members," but such claims need not be "substantially identical." *Hanlon,* 150 F.3d at 1020. The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hannon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).

Here, Plaintiff Nelson worked for Defendant in both the dry and cold sections of Defendant's McCarran warehouse in Nevada. In both sections, Plaintiff Nelson was required to retrieve personal electronic equipment off the clock prior to the start of his shift without compensation. Additionally, when working in the cold section, Plaintiff Nelson was also

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

required to don cold storage PPE off the clock prior to the start of his shift without compensation. Plaintiff Nelson is typical to members of the putative Nevada Classes because they all worked for Defendant during the applicable time period, at the same facility (the McCarran facility), under the same written policies (which are standardized, publicly posted, monitored, and enforced by supervisory employees), performing the same uncompensated work (retrieving electronic equipment and, for members of the Nevada Cold Section Class, donning PPE) prior to the start of their scheduled shift. Plaintiff further alleges that Defendant knew or should have known that he and other putative class members were performing this work off the clock because: (i) Defendant and its agents witnessed employees perform the work prior to clocking in; (ii) Defendant and its agents monitored and regularly audited its employees' performance of the work; (iii) Defendant is in possession and control of electronic data (BMAT reports) that would give rise to this knowledge; and/or (iv) Defendant and its agents allowed, approved, and/or required employees to perform the work off the clock. Accordingly, the claims of Plaintiff and all members of the putative Classes are typical.

***Plaintiff Nelson will fairly and adequately protect the interests of the Class.*** For Plaintiff to be able to adequately represent the class, he must meet two requirements: "(1) that the representative party's attorney be qualified, experienced and generally able to conduct the litigation; and (2) that the suit not be collusive and plaintiff's interests not be antagonistic to those of the remainder of the class." *In re United Energy Corp. Solar Modules Tax Shelter Investments Securities Litigation,* 122 F.R.D. 251, 257 (N.D. Cal. 1988).

Here, neither the named Plaintiff nor his counsel have interests antagonistic to those of the other members of the Classes. On the contrary, Plaintiff shares an interest with putative class members in recovering compensation for the off-the-clock work that he performed for Defendant. Because Plaintiff and other members of the Classes are all victims of Defendant's practice of suffering and/or permitting its warehouse employees to work off the clock prior to the start of their shifts, Plaintiff necessarily has the same interest in prosecuting this action as all putative class members and is thus an adequate class representative.

PLAINTIFF'S NOTICE AND MOTION FOR CLASS CERTIFICATION PURSUANT TO F.R.C.P. 23

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

In respect to the adequacy of proposed class counsel, Plaintiff's attorneys have extensive experience in wage and hour class actions. *See* Declaration of Mark R. Thierman at ¶¶ 5-9, 12 ("Thierman Dec."); Declaration of Joshua D. Buck ("Buck Dec.") at Exhibit 1. Mr. Thierman has been practicing labor and employment law for 46 years, and has focused on representing plaintiffs in large-scale wage and hour collective and class actions for the last twenty years. *See* Thierman Dec. at ¶¶ 5-9, 12. He has been counsel for a certified class in over 300 employment cases, the vast majority of which were overtime wage and hour cases. *Id.* at ¶ 6. Mr. Buck has dedicated his practice to representing employees in wage and hour class actions for over 12 years and has successfully recovered approximately $132 million in unpaid wages on behalf of employees. *See* Buck Dec. at Exhibit 1. Together, Mr. Thierman and Mr. Buck, as well as their attorney associates Leah L. Jones and Joshua R. Hendrickson, have the experience and resources to fully prosecute this case on behalf of the interests of the Class. Accordingly, the adequacy requirement for Plaintiff's counsel is met.

## B.    The Criteria of FRCP 23(b)(3) Are Met.

***The predominance requirement is met.*** The predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001) *cert. denied,* 534 U.S. 973 (2001) ("*Local Joint Executive Bd.*") (quoting *Hanlon,* 150 F.3d at 1022). Common questions predominate over individual questions if they significantly and directly impact each class member's effort to establish liability and entitlement to relief, and their resolution "can be achieved through generalized proof." *Moore v. PaineWebber, Inc.* 306 F.3d 1247, 1252 (2d Cir. 2002). As in numerous other wage and hour class actions, the fact that this litigation arises from Defendant's practice to suffer and/or permit work without compensation strongly supports a finding that the predominance requirement is satisfied. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d at 1068; *reversed on other grounds* at 571 F.3d

953, 958 (9th Cir. 2009). Once a plaintiff has alleged that there is a practice of systematically depriving employees of hours worked by virtue of such a practice, it is the defendant's obligation to demonstrate that the practice was lawful. *See, e.g., Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981); 29 C.F.R. § 785.13.

Here, the Classes are defined based upon readily ascertainable facts—whether an employee was required to retrieve personal electronic equipment for use in their shift and whether an employee was required to don PPE when working in the cold section. This is not a fail-safe class situation because inclusion within these factually ascertainable classes is not dependent upon answering the liability question—i.e., whether Defendant "knew or should have known" that employees were performing this work off the clock prior to the start of their shift. This, indeed, is the main common question in this case. Plaintiff can and will try to convince a trier of fact that Defendant knew or should have known that this work was being performed by presenting common evidence that is not unique to any particular person. For instance, Plaintiff intends to prove that the Defendant knew or should have known that employees were performing this work off the clock because: (i) representative employee testimony will indicate that Defendant and its agents witnessed employees perform the work prior to clocking in;[7] (ii) Defendant and its agents monitored and regularly audited its employees' performance of the work; (iii) Defendant is in possession and control of electronic data (BMAT reports) that would give rise to this knowledge; and/or (iv) representative employee testimony and written policies will indicate that Defendant and its agents allowed, approved, and/or required employees to perform the work off the clock. Whether a trier of fact is ultimately convinced that Plaintiff has met his burden to demonstrate Defendant's knowledge is yet to be decided but the main common question here is capable of generalized proof.

---

[7] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1046, 194 L. Ed. 2d 124 (2016) (holding that "representative or statistical sample, like all evidence, is a means to establish or defend against liability. Its permissibility turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action.").

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

*The superiority requirement is met.* The superiority inquiry focuses on promoting the interests of "efficiency, consistency, and insuring that the class members actually obtain relief." *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 701 (N.D. Ga. 2001). A proper class action prevents identical issues from being "litigated over and over [,] thus avoid[ing] duplicative proceedings and inconsistent results" and helps class members obtain relief when they might be unable or unwilling to individually litigate an action for financial reasons or for fear of repercussion. *Id.* The factors to be considered are: (1) the class members' interests in controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by or against class members, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the likely difficulties of managing the class action. FRCP 23(b)(3). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1190-92 (9th Cir. 2001).

"Class actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Local Joint Executive Bd.,* 244 F.3d at 1163 (citing *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985)). In such a situation, the superiority requirement is "easily satisfied." *Id.* That is the case here. This case involves multiple claims for relatively small amounts of money that, when considered individually, would likely deter many individuals who have been the victims of Defendant's unlawful wage and hour policy from pursuing an action because of the inherent costs of litigation, attorneys' fees, and costs. However, in the aggregate, the amount that Defendant potentially owes for working its employees off the clock may permit the plaintiffs to pool claims that would be uneconomical to litigate individually. Furthermore, since this action involves a liability determination under Defendant's uniform policies and practices, the inability to proceed as a class action here would necessitate the filing of hundreds of individual actions involving the exact same factual and legal questions. Accordingly, considering the common factual and legal issues involved, in

concert with the relatively small amounts of money per putative Class member at stake, Plaintiff meets subdivision (b)(3)'s superiority requirement for purposes of class certification.

**V.    CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully moves this Court for an Order certifying the Classes as defined above.

DATED: August 17, 2022                    Respectfully Submitted,

**THIERMAN BUCK LLP**

/s/ *Joshua R. Hendrickson*
Mark R. Thierman
Joshua D. Buck
Leah L. Jones
Joshua R. Hendrickson

*Attorneys for Plaintiff*

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com