1

2

3

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

4    CHRISTOPHER NELSON,

5                                    Plaintiff,

6        v.

7    WAL-MART ASSOCIATES, INC.,

8                                    Defendant.

9

Case No. 3:21-CV-00066-MMD-CLB

**ORDER GRANTING IN PART MOTION FOR CIRCULATION OF NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

[ECF No. 37]

10      Plaintiff Christopher Nelson ("Nelson") and all current Opt-In Plaintiffs (collectively

11  referred to as "Plaintiffs")—all non-exempt hourly paid warehouse workers—sue

12  Defendant Wal-Mart Associates, Inc. ("Walmart") under the Fair Labor Standards Act

13  ("FLSA"), 29 U.S.C. § 201, et seq., for Walmart's alleged failure to pay employees for

14  pre-shift activities and labor, and bring related claims under Nevada law. (ECF No. 14.)

15  Pending before the Court is Plaintiffs' motion for circulation of notice pursuant to 29

16  U.S.C. § 216(b) (ECF No. 37). Defendant Wal-Mart Associates, Inc. ("Walmart")

17  opposed the motion, (ECF No. 53), and Plaintiffs replied, (ECF No. 59). For the reasons

18  discussed below, the Court will grant the motion, in part, and conditionally certify this

19  case as a collective action for notice purposes because Plaintiffs have persuaded the

20  Court they are sufficiently similarly situated under the FLSA.

21  **I.      BACKGROUND[1]**

22      Nelson is a non-exempt hourly employee of Defendant's Grocery Distribution

23  Center ("GDC") warehouse in Sparks, Nevada. (ECF No. 14 at 4.) The warehouse is

24  divided into a "Dry" Section and "Cold" Section. (*Id.*) Nelson was a former processor in

25  the Cold Section, where all of Defendant's frozen and refrigerated items are distributed,

26  and currently works as a processor in the Dry Section. (*Id.* at 4, 6.) He works four shifts

27

28

---

[1]      The following allegations are adapted from the First Amended Complaint ("FAC") unless otherwise noted. (ECF No. 14.)

1 || per week, for ten paid hours per shift. (*Id.* at 4.)

2 ||      Nelson alleges Defendant requires all Dry Section employees to be prepared at

3 || the start of their shift time but does not permit them to clock in until immediately before

4 || their shift. (*Id.*) In preparation for their shift, employees must check out and bring back a

5 || mobile scanner and printer from Defendant's system control window, which takes

6 || approximately 15 minutes. (*Id.* at 5.) Nelson maintains that the scanner and printer are

7 || "integral and indispensable" to his job since Dry Section workers need the equipment to

8 || label and take inventory of Defendant's products. (*Id.*) Nelson alleges that he and other

9 || similarly situated workers are not compensated for this pre-shift activity, which amounts

10 || to around one hour per workweek or $33.53 of overtime pay for Nelson. (*Id.* at 5-6.)

11 ||      Nelson alleges Defendant similarly requires all Cold Section workers to be

12 || prepared at the start of their shift but does not permit them to clock in until immediately

13 || before their shift. (*Id.* at 6.) In preparation for their shift, Defendant requires Cold Section

14 || employees to put on personal protective equipment ("PPE") for safety reasons due to the

15 || cold working environment. (*Id.*) According to Nelson, the PPE includes RefrigiWear

16 || insulated bibs, a RefrigiWear thermal jacket, a thermal hooded sweatshirt, a stocking

17 || hat, and wool socks. (*Id.* at 6-7.) Nelson alleges that the PPE is "integral and

18 || indispensable" to the job of a Cold Section worker since they "cannot perform [their] job

19 || safely and/or effectively without donning" the apparel. (*Id.* at 7.) Nelson estimates that

20 || the process of donning the PPE takes 15 minutes per shift and employees are not

21 || compensated for this pre-shift activity, which amounts to around one hour per workweek

22 || or $33.90 of overtime pay for Nelson. (*Id.* at 7-8.)

23 ||      Nelson subsequently filed this collective and class action, asserting the following

24 || claims in the FAC: (1) failure to pay overtime wages in violation of the Fair Labor

25 || Standards Act ("FLSA"); (2) failure to pay minimum wages in violation of the Nevada

26 || Constitution; (3) failure to pay wages for all hours worked in violation of Nevada Revised

27 || Statute ("NRS") § 608.140 and § 608.016; (4) failure to pay overtime wages in violation

28 || of NRS § 608.140 and § 608.018; and (5) failure to timely pay all wages due and owing

upon termination pursuant to NRS § 608.140 and §§ 608.020-608.050. (*Id.* at 11-15.) The District Court granted, in part, a motion to dismiss the FAC, wherein it dismissed, without prejudice the claim for failure to timely pay all wages due and owing upon termination pursuant to NRS § 608.140 and §§ 608.020-608.050 based on a lack of standing. (ECF No. 45.)

In the instant motion, Nelson seeks conditional certification of his case as a collective action under the FLSA. (ECF No. 37.)[2]

## II.    LEGAL STANDARD

29 U.S.C. § 216(b) permits workers to "litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018) (*citing* 29 U.S.C. § 216(b)). "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117. "Significantly, as long as the proposed collective's 'factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment.'" *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 948 (9th Cir. 2019) (quoting *Campbell*, 903 F.3d at 1114).

FLSA collective actions generally proceed in two phases. *See Campbell*, 903 F.3d at 1100. Earlier in the litigation, around the pleading stage—and as here—plaintiffs tend to move for 'preliminary certification' of the collective action by arguing they have at least facially satisfied the 'similarly situated' requirement. *See id.* "At this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Id.* at 1109. The Court's job is merely to confirm the plaintiffs' allegations are plausible—supported by the limited evidence the plaintiffs provide. *See id.* Then, later in the litigation, and after

---

[2]    The instant motion is limited only to notification under the reduced standards of the FLSA. Nelson has also separately filed a Rule 23 class certification motion. (ECF No. 60.)

3

1    the necessary discovery is complete, defendants will typically move for 'decertification,'

2    arguing that discovery established the plaintiffs were not similarly situated after all. *See*

3    *id.* at 1100.

4         FLSA collective actions are meaningfully distinct from class actions under Fed. R.

5    Civ. P. 23. *See Campbell*, 903 F.3d at 1101; *see also id.* at 1105 ("A collective action is

6    more accurately described as a kind of mass action, in which aggrieved workers act as a

7    collective of individual plaintiffs with individual cases—capitalizing on efficiencies of

8    scale, but without necessarily permitting a specific, named representative to control the

9    litigation, except as the workers may separately so agree."). Unlike a class certification

10   motion under Rule 23, the "sole consequence of a successful motion for preliminary

11   certification is the sending of court-approved written notice to workers who may wish to

12   join the litigation as individuals." *Id.* at 1101 (quoting *Genesis Healthcare Corp. v.*

13   *Symczyk*, 569 U.S. 66, 75 (2013)) (internal quotation marks omitted).

14   **III.    DISCUSSION**

15        The question before the Court is whether Plaintiffs are similarly situated such that

16   notices will be sent out to other potential plaintiffs, who could then opt-in to Plaintiffs'

17   proposed collective action. Defendants oppose the motion, arguing that Plaintiffs have

18   not shown they are similarly situated such that notices should be sent out. (ECF No. 53.)

19   Defendants argue in the alternative, that if the Court chooses to preliminarily certify the

20   collective action, the Notice should be revised and only sent to those impacted GDC

21   associates in Nevada and South Carolina. (*Id.*) In reply, Plaintiffs agree to limit the notice

22   at this time to only those similarly situated individuals who were employed by Defendant

23   at its McCarran (Nevada) and Pageland (South Carolina) facilities. (ECF No. 59.)

24        With this concession in mind, the Court finds Plaintiffs employed at the Nevada

25   and South Carolina facilities are similarly situated here because Plaintiffs have made the

26   "requisite showing that they and the proposed [collective action members] were allegedly

27   'victims of a common policy or plan,' thereby warranting conditional certification." *Greene*

28   *v. Omni Limousine, Inc.,* Case No. 2:18-cv-01760-GMN-VCF, 2019 WL 2503950, at *3

4

1   (D. Nev. June 15, 2019) (certifying conditional FLSA collective action for notice

2   purposes). Plaintiffs' operative pleading and the limited evidence Plaintiffs have

3   presented to the Court sufficiently show that they were victims of Defendants' common

4   policy—that they were suffered and/or permitted to work without compensation prior to

5   the start of their shift. The Court thus finds Plaintiffs have satisfied the plausibility

6   requirement for conditional collective action certification. *See Campbell*, 903 F.3d at

7   1109.

8        "[A]s long as the proposed collective's 'factual or legal similarities are material to

9   the resolution of their case, dissimilarities in other respects should not defeat collective

10  treatment.'" *Senne*, 934 F.3d at 948 (citation omitted). As discussed above, Plaintiffs

11  have made a sufficient showing that such factual and legal similarities exist to satisfy the

12  "lenient standard that requires a modest showing" at this stage of the litigation. *Gonzalez*

13  *v. Diamond Resorts Int'l Mktg., Inc.,* Case No. 2:18-cv-00979-APG-CWH, 2019 WL

14  3430770, at *2 (D. Nev. July 29, 2019).

15       The Court will therefore conditionally certify this case as a collective action—

16  limited to GDC workers in the Nevada and South Carolina locations. Accordingly, the

17  Court orders the parties to work collaboratively to reconcile and resolve all notice

18  disputes—consistent with the limitation of workers to the Nevada and South Carolina

19  locations—and come up with a revised notice together.

20  **IV.    CONCLUSION**

21       The Court notes that the parties made several arguments and cited to several

22  cases not discussed above. The Court has reviewed these arguments and cases and

23  determines that they do not warrant discussion as they do not affect the outcome of the

24  motion before the Court.

25       For the reasons discussed above, **IT IS ORDERED** that Plaintiffs' motion for

26  conditional certification, (ECF No. 37), is **GRANTED**, in part, as specified herein.

27       **IT IS FURTHER ORDERED** that the Court conditionally certifies a collective

28  action consisting of GDC workers at the McCarran, Nevada and Pageland, South

1   Carolina locations.

2        **IT IS FURTHER ORDERED** that the parties must work together to resolve all

3   collective action notice issues, and if they are unable to reach an agreement, they must

4   present their notice disputes in a motion that complies with the Local Rules.

5        **IT IS FURTHER ORDERED** that the parties shall have **60 days** to submit a

6   revised notice to the Court for approval.

7        **IT IS SO ORDERED.**

8   **DATE:** August 23, 2022_____.

9

10  _____
    **UNITED STATES MAGISTRATE JUDGE**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28