Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
Joshua R. Hendrickson, Nev. Bar No. 12225
joshh@thiermanbuck.com
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiffs and all others
similarly situated.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTOPHER NELSON, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> WAL-MART ASSOCIATES, INC., and DOES 1 through 50, inclusive, <br><br> Defendant(s). | Case No.:  3:21-cv-00066-MMD-CLB <br><br> **UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT** |

COME NOW Plaintiff CHRISTOPHER NELSON, on behalf of himself and all others similarly situated ("Plaintiffs"), hereby move this honorable Court pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Fair Labor Standards Act ("FLSA") for an order:

    (1)    Preliminarily approving the class and collective action settlement with Defendant Walmart Associates, Inc.;

    (2)    Preliminarily certifying the Rule 23 Class for purposes of settlement;

(3)     Scheduling a hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable and adequate as to the class members; and

(4)     Approving the manner and form of Notice and proposed distribution plan to class members.

This motion is based on this Motion, the following Memorandum of Points and Authorities in support thereof, the settlement agreement and exhibits thereto attached and filed herewith as Exhibit B to the declaration of Joshua D. Buck, the Buck declaration submitted in support of this Motion, all pleadings and papers on file in this action, and such other matters as the Court may consider.

Dated: August 14, 2023

/s/Joshua D. Buck
Mark R. Thierman
Joshua D. Buck
Leah L. Jones
Joshua R. Hendrickson
THIERMAN BUCK LLP
*Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND OVERVIEW OF SETTLEMENT TERMS

Plaintiff CHRISTOPHER NELSON ("Plaintiff") seeks preliminary approval of this class and collective action settlement ("Settlement") pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Fair Labor Standards Act (FLSA).  Plaintiff and Defendant, WAL-MART ASSOCIATES, INC., ("Defendant" or "Walmart") (collectively Plaintiff and Defendant are referred to as "the Parties") participated in mediation with the Honorable Gene T. Porter, Ret., and although the Parties did not reach resolution during the mediation, the Parties continued to negotiate in good faith, and were able to reach a resolution in this action.

The Parties have come to a settlement in this action for a total settlement amount of $1,450,000.00 to be paid to class members on a claims-made basis. All of the terms of the Settlement[1] have been agreed upon as follows:

- Approximately $887,750.00 in estimated settlement funds to the Class[2];

- Approximately $38,750.00 in Settlement Administrator's reasonable fees and expenses approved by the Court;

- $30,000.00 total Enhancement Awards to Plaintiff and Class Representatives, Christopher Nelson ($15,000), Marcella Bostrom, Donna Karsten, and Monica Schulze, ($5,000 each) for their service as Class Representatives[3];

- $478,500.00 in attorneys' fees (no more than 33% of the maximum settlement amount[4]); and

---

[1] This Motion incorporates by reference the definitions in the Settlement Agreement between Plaintiffs and Defendant and terms used herein shall have the same meaning as set forth in the Settlement Agreement, hereinafter "Settlement" or "Settlement Agreement" attached as Exhibit B to the Declaration of Joshua D. Buck, hereinafter "Buck Dec." at ¶ 3.

[2] The dollar amounts provided are approximations based on the pending approval by this Court of Class Counsel's fees and costs, the Settlement Administrator's fees, as well as Court approval of the Class Representative's Enhancement Awards. *See* Buck Dec. at ¶ 3.

[3] *See* Ex. B, Settlement at §5.4.1: Subject to Court approval, Plaintiffs shall apply to the Court for a reasonable incentive payment to be paid to Settlement Class Representatives.

[4] *Id.* at §5.3.1: subject to Court approval, Plaintiffs shall apply to the Court for an award of reasonable Attorneys' Fees and Litigation Expenses to be paid from the Class Settlement Amount.  Walmart takes no position on the amount to be requested for Attorneys' Fees and Litigation Expenses but shall not object to a reasonable request by class counsel. *Id.*

- $15,000.00 in costs.

*See* Exhibit B, "Settlement" at ¶¶ 5.1, 5.3.1; 5.4.1; 5.5.1; Buck Dec. at ¶ 8.

## II.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND[5]

Plaintiff filed the original class and collective action complaint in this action in the First Judicial District Court of the State of Nevada, in and for the County of Storey, on December 23, 2020. (ECF No. 1-2.) Walmart filed its Notice of Removal to federal court on January 29, 2021, (ECF No. 1) and subsequently filed a Motion to Dismiss on March 31, 2021. (ECF No. 11.) Plaintiff filed the operative First Amended Complaint ("FAC") on April 2, 2021, alleging five causes of action: (1) failure to pay overtime in violation of 29 U.S.C. § 207; (2) failure to pay minimum wages in violation of the Nevada Constitution; (3) failure to compensate for all hours worked in violation of NRS 608.140 and 608.016; (4) failure to pay overtime in violation of NRS 608.140 and 608.018; and (5) failure to timely pay all wages due and owing in violation of NRS 608.140 and 608.020-.050. (ECF No. 14.) Plaintiff's allegations arise from Walmart's policies and practices of requiring Plaintiff and similarly situated employees to complete compensable work activities pre-shift without pay on behalf of two classes of employees under state law as well as the Fair Labor Standards Act ("FLSA"). *See* FAC, generally.

Walmart re-filed its Motion to Dismiss Plaintiff's First Amended Complaint on April 16, 2021. (ECF No. 16.) In addition to Named Plaintiff Christopher Nelson, opt-in Plaintiff Monica Shulze opted into the Litigation on October 22, 2021 (ECF No. 38), and opt-in Plaintiffs Marcella Bostrom and Donna Karsten opted into the Litigation on October 25, 2021 (ECF No. 39). On February 9, 2022, this Court granted in part and denied in part Walmart's Motion to Dismiss. (ECF No. 45.) The Court dismissed Plaintiff's claims under NRS Sections 608.020-050 for waiting time penalties without prejudice, providing that: "Plaintiffs may seek amendment if an appropriate class representative, who can properly represent the former employees, joins this lawsuit." (*Id.*) The Court denied Defendant's motion on all other points.

---

[5] Walmart does not concede the Plaintiffs' allegations, nor does it concede all of the factual statements or characterizations of legal positions set forth herein. For purposes of this Settlement, however, Walmart does not oppose the filing of this Motion or the granting of preliminary approval.

On August 17, 2022, Plaintiffs filed their Motion for Class Certification (ECF No. 60), which was reinstated pursuant to court order on February 27, 2023 (ECF Nos. 63, 64).  On August 23, 2022, following briefing by the Parties, the District Court conditionally certified a collective action under the FLSA consisting of hourly Walmart associates at the McCarran, Nevada and Pageland, South Carolina distribution centers.  (ECF No. 37.)

After conditional certification was granted, the case, along with the deadline to send notice to the collective as well as the deadline for Walmart to respond to Plaintiff's Motion for Class Certification were stayed to allow the Parties to engage in settlement discussions.  (ECF No. 63.)  Prior to sending notice to the collective, and prior to the District Court ruling on Plaintiff's Motion for Rule 23 Class Certification, and as a result of arms-length negotiations, including a mediation session with Judge Gene Porter (Retired) as well as continued discussions between and among counsel, the Parties reached an agreement to settle the claims in the Litigation as set forth in the Settlement Agreement.  *See* Buck Dec. at ¶ 10; Settlement at § 3.

For the purpose of settling this case, the Parties stipulate and agree to the certification of the following Settlement Classes:[6]

> Nevada Settlement Class: Christopher Nelson, Marcella Bostrom, Donna Karsten and all other Walmart hourly associates who worked at the McCarran, Nevada Distribution Center during the Settlement Class Period and who either (i) worked in the dry section of the McCarran, Nevada Distribution Center and were required to retrieve a scanner, printer, or other electronic device pre-shift prior to clocking in, or (ii) worked in the perishable section of the McCarran, Nevada Distribution Center and were required to don cold storage personal protective equipment (PPE) pre-shift prior to clocking in. *See* Settlement at § 4.1.1.

> South Carolina Settlement Class: Monica Shulze and all other Walmart hourly associates who worked at the Pageland, South Carolina Distribution Center during the Settlement Class Period and who either (i) worked in the dry section of the Pageland, South Carolina Distribution Center and were required to retrieve a scanner,

---

[6] Walmart does not concede that class or collective certification is appropriate in this action, but Walmart does not oppose certification of the Settlement Classes for settlement purposes consistent with the Parties' Settlement Agreement. *See* Settlement at §§ 3.9, 4.1, 4.2, 16.1.

printer, or other electronic device pre-shift prior to clocking in, or (ii) worked in the perishable section of the Pageland, South Carolina Distribution Center and were required to don cold storage personal protective equipment (PPE) pre-shift prior to clocking in. *See* Settlement at § 4.1.2.

## III.  SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

The Parties' Settlement provides for significant monetary recovery on behalf of the Classes, and releases only those claims arising out of the alleged facts, circumstances and occurrences alleged in the Complaint. *See* Settlement at ¶ 12.3.  Further, the Settlement sets forth the legally appropriate mechanism for providing notice to the Class of the terms and conditions of the Settlement. *Id.* at §§ 6, 7, 8, 9, and 10.

### A.  The Recovery.

The Parties have come to a settlement in this action for a total settlement amount of $1,450,000.00 to be paid to class members on a claims-made basis. All of the terms of the Settlement have been agreed upon as follows:

- Approximately $887,750.00 in estimated settlement funds to the Class[7];

- Approximately, $38,750.00 in Settlement Administrator's reasonable fees and expenses approved by the Court;

- $30,000.00 total Enhancement Award to Plaintiffs and Class Representatives, Christopher Nelson ($15,000), Marcella Bostrom, Donna Karsten, and Monica Schulze, ($5,000 each) for their service as Class Representatives[8];

- $478,500.00 in attorneys' fees (no more than 33% of the maximum settlement amount[9]); and

- $15,000.00 in costs.

*See* Exhibit B, "Settlement" at ¶¶ 5.1, 5.3.1; 5.4.1; 5.5.1; Buck Dec. at ¶ 8. Subject to Court approval, Defendant agrees to pay a maximum Class Settlement Amount of up to $1,450,000.00 to cover all payments arising out of this Settlement, other than the employers' share of taxes which shall be paid by Defendant in addition to the Class Settlement Amount. *See* Settlement at

---

[7] *See* fn, 2, above.
[8] *See* fn. 3, above.
[9] *See* fn. 4, above.

¶ 5.1. Settlement Class Members who submit a timely and valid Claim Form shall be eligible to recover a share of the Class Settlement Amount, in accordance with a Plan of Allocation that takes into account factors including whether each Settlement Class Member is a member of the Nevada Settlement Class or the South Carolina Settlement Class, the number of pay periods worked during the Settlement Class Period by each such Settlement Class Member and whether or not the associate is a current or former associate. *Id.* at ¶ 5.2.

The Settlement provides that fifty percent of each payment to an Approved Claimant shall constitute payment of wage claims such that they shall be subject to tax withholding and reported on an IRS W-2 Form and 50% of each payment to an Approved Claimant will be allocated to settlement of claims for renumeration and constitute remuneration for damages separate and distinct from lost wages which shall not be subject to tax withholding and will be reported on an IRS 1099 Form, if required. *Id.* at ¶ 5.2.5.   The Settlement Administrator shall be responsible for issuing appropriate tax forms, if any, to Approved Claimants, consistent with the Settlement Agreement.  *Id.*  Each Approved Claimant assumes full responsibility and liability for any employee taxes owned on their settlement payment.  *Id.*  Other than with respect to the employers' share of taxes, under no circumstances shall Defendant be obligated to pay more than the Class Settlement Amount in connection with this Settlement.  *Id.* at ¶ 5.6.

**B.    The Release.**

The Settlement provides that, in exchange for the good and valuable consideration set forth therein, all Releasing Settlement Class Members shall further waive any and all rights or benefits that they as individuals or the classes may now have as a result of the alleged facts, circumstances, and occurrences underlying the Litigation.  *Id.* at ¶ 12.3.

**C.    The Settlement Mechanism.**

The Parties have agreed to use a third-party Settlement Administrator, Phoenix Class Action Administration Solutions, to administer the claims process. *Id.* at ¶ 6, generally. The Settlement provides for the Settlement Administrator to send out notice explaining the terms and conditions of the Settlement to all Class Members. *Id.* and ¶¶ 6.1, 6.2.  A copy of the Notice to be approved by the Court and sent to class members is attached as Exhibit 3 to the Settlement.

The Claim Forms, specific to the Nevada Class and South Carolina Class are attached as Exhibits 1 and 1.A, respectively to the Settlement. In order to request exclusion from the Settlement, the Settlement Class Member must request to exclude himself or herself from the Settlement as set forth by the Settlement Agreement and in the Notice. *Id.* at ¶¶ 2.12 and 8. Following mailing of the Notice, class members then have forty-five (45) days to submit a claim form and participate in the Settlement, request to be excluded from the Settlement, or object to the Settlement. *Id.* ¶¶ 6; 8; 9.

The Settlement further provides that following the notice period the Court will hold a final "fairness" hearing to provide final review and approval of the Settlement. *Id.* at ¶ 13.1.4. The Notice advises class members about the fairness hearing and their opportunity to attend the hearing and make their views known. *Id.,* Exhibit 3, Notice.  At the fairness hearing, the Parties will address any issues raised by class members or the notice process itself, and the Court will have a second opportunity to review the settlement in full.

## IV.    THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT.

FRCP 23(e) provides that settlement of the claims of a certified class is subject to the court's approval. In general, settlement of class actions is favored as a matter of "strong judicial policy." *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)).

Procedurally, the reviewing court's evaluation is conducted in two stages. *Alberto,* 252 F.R.D. at 658. At the first stage the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the proposed class settlement to be given to the class. *Id.* (citations omitted); *see also Manual for Complex Litigation (Fourth)* § 21.632 (2004) *(*"Manual for Complex Litigation"*)* (summarizing "preliminary fairness review"). Stage two is the fairness hearing, set for a time after notice has been provided to the class and class members have had an opportunity to submit claims or objections to the proposed settlement or to opt out of it, and the court reaches a final

determination about whether the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the dispute. *Id.* at 659 (citations omitted).

Because this is the first stage of the Court's evaluation of the Settlement, Plaintiffs submit that (A) the Class should be certified, (B) the Settlement should be preliminary deemed fair, reasonable, and adequate, and (C) notice should be sent out as set forth in the Settlement.

### A.    The Certified FLSA Collective and the Proposed Settlement Class

This Court conditionally certified a collective action under the FLSA consisting of hourly Walmart associates at the McCarran, Nevada and Pageland, South Carolina distribution centers. (ECF No. 37.)  Pursuant to the Settlement, the Parties seek to certify the following classes for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure and the FLSA:

> Nevada Settlement Class: Christopher Nelson, Marcella Bostrom, Donna Karsten and all other Walmart hourly associates who worked at the McCarran, Nevada Distribution Center during the Settlement Class Period and who either (i) worked in the dry section of the McCarran, Nevada Distribution Center and were required to retrieve a scanner, printer, or other electronic device pre-shift prior to clocking in, or (ii) worked in the perishable section of the McCarran, Nevada Distribution Center and were required to don cold storage personal protective equipment (PPE) pre-shift prior to clocking in. *See* Settlement at § 4.1.1.

> South Carolina Settlement Class: Monica Shulze and all other Walmart hourly associates who worked at the  Pageland, South Carolina Distribution Center during the Settlement Class Period and who either (i) worked in the dry section of the Pageland, South Carolina Distribution Center and were required to retrieve a scanner, printer, or other electronic device pre-shift prior to clocking in, or (ii) worked in the perishable section of the Pageland, South Carolina Distribution Center and were required to don cold storage personal protective equipment (PPE) pre-shift prior to clocking in. *See* Settlement at § 4.1.2.

*See also* Settlement at ¶ 2.32 (defining the "Settlement Class Period" as "the period of time from December 23, 2017, through preliminary approval.").

### B.    The Proposed Settlement Should be Preliminarily Approved

In the Ninth Circuit, settlements of complex class action lawsuits are strongly favored. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Speed Shore Corp., v.*

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT

*Denda,* 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."). It is within the broad discretion of the trial court to approve a class action settlement. *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982). The approval of a class action settlement takes place in two stages: preliminary approval and final approval. *West v. Circle K Stores, Inc.,* No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006). Preliminary approval of a class action settlement and notice to the class is appropriate if proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. FRCP 23(e)(2); *Bellinghausen v. Tractor Supply Co.,* 303 F.R.D. 611, 619 (N.D. Cal. 2014) (citing *Cruz v. Sky Chefs, Inc.,* No. C-12-02705 DMR, 2014 WL 2089938, at *7 (N.D. Cal. May 19, 2014) (quoting *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing." *See In Re M.L. Stern Overtime Litigation,* No. 07-CV-0118-BTM (JMA), 2009 WL 995864 at *3 (S.D. Cal. April 13, 2009) (quoting Manual on Complex Litigation Fourth § 21.632 (2004)). During the preliminary process, the Court simply determines "whether there is any reason to notify the class members of the proposed class settlement and to proceed with the fairness hearing." *Gatreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). The Court's review is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice,* 688 F.2d at 625. If there are no obvious deficiencies, and the settlement falls into the range of possible approval, it should be preliminarily approved. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1057 (9th Cir. 2008); *Alaniz v. California Processing, Inc.,* 73 F.R.D. 269, 273

(C.D. Cal. 1976).    As set forth below, the proposed Settlement satisfies the standard for preliminary approval.

### 1.    The Settlement Falls Within the Range of Possible Approval Given the Strengths and Weaknesses of the Claims and Defenses

To grant preliminary approval, this Court must decide that the Settlement falls within the approved range for preliminary approval.  *Zepeda*, 2015 WL 6746913, at *4; *Fraley*, 2012 WL 5838198, at *1 n.1; *Tableware*, 484 F. Supp. 2d at 1079.  To determine whether a settlement "falls within the range of possible approval," courts consider "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement[.]" *Tableware*, 484 F.Supp.2d at 1080.  In making a determination of whether the Settlement is adequate and reasonable, the Court must ultimately balance the following factors: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel ..." *Hanlon,* 150 F.3d at 1026.

Here, the Settlement represents a significant recovery on behalf of the Class given the risks associated with this case. *See* Buck Dec. at ¶¶ 9, 10. Settlement Class Counsel represents that they have conducted a thorough investigation into the facts of this case and have diligently pursued an investigation of the claims against Walmart, including, but not limited to: (i) reviewing relevant documents; (ii) researching the applicable law and the potential defenses; (iii) developing the arguments for class and conditional certification and other significant issues; (iv) litigating these issues at the District Court; and (v) advocating for the rights of the putative classes. *Id.*  Based on their own independent investigation and evaluation, Settlement Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Defendant, trial risk, and appellate risk. *Id.*

Defendant denies any liability or wrongdoing of any kind associated with the claims alleged and contends that this Litigation is not appropriate for class or collective certification

pursuant to the FLSA, FRCP 23 or any other federal or state rule, statute, law, or provision.  *See* Settlement at ¶ 3.9.   Defendant continues to assert that the Litigation fails to meet the prerequisites necessary for class or collective action treatment under applicable law.   *Id.* Defendant further asserts that it has complied with all applicable provisions of federal or state statutory and common law.  *Id.*  Defendant further states that, despite its good-faith belief that it is not liable for any of the alleged claims, and despite its good-faith belief that certification is not appropriate, Defendant will not oppose the District Court's certification of the Settlement Classes contemplated by this Agreement solely for purposes of effectuating this Settlement. *Id.*   Other than for purposes of this Settlement, Defendant does not waive its objections to certification of the Settlement Classes, or any other class, in this Litigation.

Thus, the Settlement represents a compromise between experienced counsel for Plaintiffs and Defendant based upon each Party's honest assessment of the legal and factual strengths and weaknesses of their respective position.  *See* Buck Dec. at ¶ 15.

## 2.    All four criteria of FRCP 23(a) are met.

*FRCP 23(a)(1): The class is so numerous that joinder of all members is impracticable.* "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). Here, the settlement Class consists of approximately 3,996 individuals. *See* Buck Dec. at ¶ 9. Plainly, the numerosity criterion is satisfied.

*FRCP 23(a)(2): There are questions of law or fact common to the Class.* The commonality requirement is construed liberally. *Alberto v. GMRI, Inc.*, 252 F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (Rule 23(a)(2) construed "permissively"). The class members' claims must share some substantial issues of law or fact but need not be identical. *Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfies this criterion. *Hanlon,* 150 F.3d at 1019.

Under state and federal law, all non-exempt employees are entitled to compensation for all hours worked over forty (40) hours in a workweek at an overtime premium. All non-exempt employees who involuntarily leave their employment are also entitled to be paid all their wages due and owing at the time their employment ends under Nevada law. Given this legal foundation, Plaintiffs and class members assert common factual and legal questions, which include, whether class members were compensated for all hours they worked at the appropriate legal rate pursuant to state and federal law and whether class members who are former employees were paid all their wages due and owing at the time of their termination. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp.2d 1053, 1062-63 (N.D. Cal. 2007); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 607 (C.D. Cal. 2005). Based on these common issues, this criterion is met. For purposes of approving this Settlement, Defendant does not oppose Plaintiffs' assertion that sufficient commonality exists.

**FRCP 23(a)(3): The claims or defenses of the representative parties are typical of the claims or defenses of the class.** Like commonality, the typicality standard is applied "permissive[ly]." *See Staton,* 327 F.3d at 957 (quoting *Hanlon,* 150 F.3d at 1020). It is satisfied if the representatives' claims are "'reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Id.*

Here, the claims or defenses of the representative parties are typical of the claims or defenses of the class because all Nevada Settlement Class Members were classified as non-exempt hourly paid food distribution warehouse employees who worked at the McCarran, Nevada Distribution Center during the Settlement Class Period and who either (i) worked in the dry section of the McCarran, Nevada Distribution Center and were required to retrieve a scanner, printer, or other electronic device pre-shift prior to clocking in, or (ii) worked in the perishable section of the McCarran, Nevada Distribution Center and were required to don cold storage personal protective equipment (PPE) pre-shift prior to clocking in. *See* Settlement at § 4.1.1. Similarly, all South Carolina Settlement Class members were classified as non-exempt hourly associates who worked at the Pageland, South Carolina Distribution Center during the Settlement Class Period and who either (i) worked in the dry section of the Pageland, South Carolina

Distribution Center and were required to retrieve a scanner, printer, or other electronic device pre-shift prior to clocking in, or (ii) worked in the perishable section of the Pageland, South Carolina Distribution Center and were required to don cold storage personal protective equipment (PPE) pre-shift prior to clocking in. *See* Settlement at § 4.1.2. Accordingly, Named Plaintiff and the Class Representatives have asserted the same wage and hour violations as all other members of the class. Thus, their claims are typical to those of the Classes.

**FRCP 23(a)(4): The representative parties will fairly and adequately protect the interests of the class.** Courts have interpreted this requirement as posing two questions: (1) whether either the named plaintiffs or their counsel has any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. *See id.* (*citing Hanlon* and other cases). Here, the named Plaintiff and the Class Representatives share with absent class members an interest in recovering compensation that Defendant allegedly denied them due to alleged pre-shift donning of PPE. And Plaintiffs' counsel has extensive experience in wage and hour class actions, as well as class action litigation more generally, and the proposed settlement was reached only after arm's-length direct settlement discussions. *See* Buck Dec., at ¶¶ 2, 5, 10.

### 3. The criteria of FRCP 23(b)(3) are met.

To certify a class under FRCP 23(b)(3), a court must find that common questions of fact or law predominate over questions affecting only individual members of the proposed class, and that a class action is the superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3).

**The predominance requirement is met**. The predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("*Local Joint Executive Bd.*") (quoting *Hanlon,* 150 F.3d at 1022).

As in numerous other wage and hour class actions, the fact that this litigation arises from Defendant's alleged unlawful and uniform policies strongly supports a finding that the predominance requirement is satisfied. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d at 1068; *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (C.A.9 2009). Accordingly, Plaintiff argues that common issues of law and fact predominate.

**The superiority requirement is met.** Determining whether a class action is the superior method of adjudicating a controversy involves "comparing alternative mechanisms of dispute resolution" as applied to the facts and claims. *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. at 614. Plaintiffs allege that the situation here is comparable to that of the Las Vegas Sands' former casino employees who sought damages for failure to provide a statutorily required 60-day notice before closure:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class members would recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985). In such a situation, the superiority requirement is "easily satisfied." *Id.* Because the sums per employee are relatively small, the Plaintiffs' litigation costs high, and Defendant's conduct uniform, a class action is superior to filing nearly two-hundred individual actions concerning the same facts and legal issues.

**B.    The Proposed Settlement Is Fair, Reasonable, and Adequate.**

The *Manual for Complex Litigation* § 21.62 identifies several factors that courts may weigh in determining whether a settlement is fair, reasonable, and adequate (FRCP 23(e)(2)), summarizing the inquiry as follows: Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are

not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process. *Id.,* § 21.62 at 315.

At the preliminary approval stage, courts do not make a final determination of fairness, reasonableness, and adequacy. Instead, the key question at this point is only whether the settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377,386 (C.D. Cal. 2007). Thus, the inquiry should focus on whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating. *Molski v. Gleich,* 318 F.3d 937,944 (9th Cir. 2003); *see also Manual for Complex Litigation* § 21.632. "Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. *Id.,* § 21.633 at 321. Plaintiff avers that all inquiries are preliminarily satisfied as follows:

## 1.    The Settlement Is Fair.

**Fairness of distribution among class members.** The proposed settlement is fair in that class members' benefits are determined by the Plan of Allocation described in the Settlement Agreement that takes into account factors including whether each Settlement Class Member is a member of the Nevada Settlement Class or the South Carolina Settlement Class, the number of pay periods worked during the Settlement Class Period by each such Settlement Class Member and whether or not the associate is a current or former associate.  *See* Settlement at § 5.2.

**Fairness of proposed attorneys' fees.** The allocation of total settlement funds between class members and the attorneys is also fair, in that the settlement agreement provides for Plaintiff's counsel to seek no more than 33% of the maximum settlement amount in fees. *See* Buck Dec. at ¶ 8. The requested fees are fair compensation for undertaking complex, risky,

expensive, and time-consuming litigation solely on a contingency basis. Further, the requests are in line with other attorneys' fees awards for wage and hour class actions, particularly where a significant portion of the class members will be receiving substantial claim payment amounts of several thousand dollars or more. Indeed, courts have recognized that an appropriate method for awarding attorneys' fees in class action is to award a percentage of the "common fund" created as a result of the settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Id.*

Moreover, several courts have expressed frustration with the alternative "lodestar" approach for deciding fee awards, which usually involves wading through voluminous and often indecipherable time records. Commenting on the loadstar approach, Chief Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation,* 723 F.Supp. 1373, 1375 (N.D. Cal. 1989): This court is compelled to ask, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only does the *Lindy Kerr-Johnson* analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be in the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fees petition. Or class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.  Indeed, the percentage approach is preferable to the lodestar because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. *In re Activision Securities Litigation*, 723 F. Supp. at 1378-79.

Courts now routinely use the percentage of the common fund approach to determine the award of attorneys' fees. (*See, e.g., In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378-79 (9th Cir. 1994) (approving attorneys' fees of 33 1/3% of settlement fund). Class counsels'

application for approximately 32% of the Settlement Funds is within the range of reasonableness. Historically, courts have awarded percentage fees in the range of 20% to 50% of the common fund, depending on the circumstances of the case. *Newberg on Class Action* § 14:6 (4th ed. 2008); *see also In re Activision Securities Litigation*, 723 F.Supp. 1373, 1378 (N.D. Cal. 1989). According to *Newberg*: "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually, 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." *Newberg*, § 14:6. Accordingly, the attorneys' fees sought in this case are fair and reasonable.

**Fairness of proposed "enhancement" awards for the named Plaintiffs**. The principle of fairness is also well served by the enhancement payments proposed for the named Plaintiffs. Plaintiffs provided invaluable assistance to Plaintiffs' counsel in explaining Defendant's alleged compensation policies and procedures and in providing information to assist in the settlement negotiations. Further, Plaintiffs incurred personal risk in bringing this lawsuit on behalf of the other persons in the class. *See, e.g., Koehl v. Verio,* 142 Cal. App. 4th 1313, 1328 (2006) (in wage and hour action where defendant prevailed at trial, named plaintiffs were held liable, jointly and severally, for defendant's attorneys' fees). Moreover, Plaintiffs could have been held liable for Defendant's costs if they were ultimately unsuccessful in resolving the case and their potential employment opportunities could (and can still be) impacted because of their public participation in this lawsuit. Such service payments are recognized as serving an important function in promoting class action settlements. In *League of Martin v. City of Milwaukee,* 588 F. Supp. 1004 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit. *Id.* at 1024. Accordingly, the proposed enhancements are fair.

### 2. The Settlement Is Reasonable.

At $1,450,000.00, the proposed settlement is reasonable. This is not a settlement where the aggregate figure is large simply because the size of the class is in the tens or hundreds of

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT

thousands. Instead, the class size in this case is relatively small in comparison, and Settlement Class Members are eligible for substantial individual financial benefits. These considerations indicate that the proposed settlement falls within the range of reasonableness, warranting preliminary approval.

This conclusion is reinforced by considering such factors as the risk that a class might not be certified pursuant to FRCP 23, decertified pursuant to the FLSA, or might be significantly smaller than proposed, and the time, expense, and complexity of the litigation, including the possibility of additional appellate proceedings. Of particular relevance to the reasonableness of the proposed settlement are the numerous potentially dispositive defenses advanced by Defendant including, among other things, the arguments that the claims are individualized and, therefore, not susceptible to class or collective treatment, Defendant had policies in place that prohibited off-the-clock work and had no knowledge of the alleged off-the-clock work pursuant to the FLSA, or the time it took employees working in the dry sections to retrieve a scanner, printer, or other electronic device pre-shift prior to clocking in or for employees working in the perishable sections to don cold storage PPE pre-shift prior to clocking in, and that any time spent were deviations from Defendant's policies and were also de-minimus. Given the significant legal and factual uncertainty relating to these defenses, the $1,450,000.00 settlement represents a reasonable recovery based on the alleged violations. *See* Buck Dec. at ¶¶ 9-10.

Furthermore, while Class Counsel believe that Plaintiffs' claims are meritorious, they are experienced class action litigators, and understand that the outcome of class certification, trial, and any attendant appeals were inherently uncertain, as well as likely to consume many more months or years. *Id.* Having reviewed relevant compensation data and employment information, counsel for the Parties—all experienced class action litigators well versed in wage and hour law—arrived at a reasonable resolution through a protracted an arm's-length direct negotiation process, which continued into all details of the settlement agreement and ancillary documents. *Id.*

Another factor considered in approving a settlement is the complexity, expense, and likely duration of the litigation. *Offices for Justice,* 688 F.2d at 625. The Court must weigh the

benefits of the proposed settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *See, e.g., Young v. Katz,* 447 F .2d 431,433-34 (5th Cir. 1971). Employment cases, and specifically wage and hour cases, are expensive and time consuming. That this is a class action further amplifies the economies of time, effort, and expense achieved by the settlement. Inevitably, the certification process alone would add time and expense to the litigation process. The settlement, on the other hand, provides class members substantial, prompt and efficient relief. The settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also 4 Newberg on Class Actions* § 11.41 (citing cases).

In sum, the resulting settlement is, in light of all applicable factors, reasonable, and warrants notification of its terms to members of the potential class for their consideration and response.

### 3.    The Settlement Is Adequate.

As previously mentioned, in a somewhat similar class action the court aptly observed that it would have been irrational for most, and probably all, class members to pursue their claims on an individual basis "because of the disparity between their litigation costs and what they hope to recover." *Local Joint Executive Bd.*, 244 F.3d at 1163.

The recovery provided through the settlement is reasonable, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes.... Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.... "*Officers for Justice,* 688 F.2d at 634 (citation omitted). Accordingly, the settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska P'ship,* 151 F .3d 1234, 1242 (9th Cir. 1998). An additional consideration is that the settlement provides for payment to the class now, rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.,* 495 F .2d 448, 463 (2d Cir. 1974).

Thus, considering the present value of the settlement sum, the probability of lengthy litigation in the absence of a settlement, and the risks that the class might not have prevailed at trial, it is no exaggeration to predict that without using the class action process, the relief that members of the class were likely to achieve ranged from negligible to zero. Consequently, the $1,450,000.00 settlement satisfies the criterion of adequacy. *See Manual for Complex Litigation* § 21.62 ("Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.").

C.      **The Notice Adequately Informs Class Members of the Settlement.**

The Notice explains the claim process; how to request to be excluded or object; and the consequences of the action the class member takes (filing a claim, doing nothing, opting out, or objecting), in terms of both financial benefit and release of state claims. *See* Exhibit 3, Notice. The Notice advises class members about the final approval hearing, their rights with respect to that hearing, and how to get more information. *Id.* Likewise, the Claim Form and exclusion process are simple and straightforward. *See* Claim forms attached as Exhibits 1 and 1.A to the Settlement and Exclusion process at § 8. The 45-day time frame for returning a claim is reasonable, allowing class members to digest the information in the notice and obtain answers to questions before deciding on the action they want to take. Accordingly, in addition to approving the Settlement agreement as a whole, Plaintiff respectfully asks that the Court approve the Notice and other ancillary forms in substantially the format presented with the Settlement.

D.      **The Court Should Approve the Establishment of a Qualified Settlement Fund.**

Under the Settlement, Walmart has agreed to transfer the required portions of the Class Settlement Amount (in accordance with the timetable as set forth in Section 10 of the Settlement Agreement) into a Qualified Settlement Fund as described in Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-1, in full settlement and discharge of the Settlement Class Members' claims against Walmart that are included under the Settlement. The Parties determined that establishing a Qualified Settlement Fund to receive and hold the settlement funds, and to distribute the funds according to the terms of the Settlement Agreement and under the administration of the

Settlement Administrator would serve the Parties' best interests, and request that the Court approve the establishment of a Qualified Settlement Fund.[10]

Court approval of the establishment of the Qualified Settlement Fund serves the Settlement Class Members' interests by assuring that the Class Settlement Amount is transferred by Walmart following approval of this Motion, and benefits Walmart by assuring finality to the claims against it in this case that are the subject of the Settlement.[11]

## V.    CONCLUSION

Based on the information and reasons provided above, Plaintiffs respectfully request that the Court enter the proposed order granting preliminary approval of the class action Settlement attached hereto.

Dated: August 14, 2023.                          THIERMAN BUCK, LLP

                                                 By:    */s/Joshua D. Buck*
                                                        Mark R. Thierman
                                                        Joshua D. Buck
                                                        Leah L. Jones
                                                        Joshua R. Hendrickson
                                                        *Attorneys for Plaintiffs*

---

[10]  The Qualified Settlement Fund will be administered by the Settlement Administrator, who, along with the Qualified Settlement Fund, will remain subject to the continuing jurisdiction of this Court.  The Qualified Settlement Fund will be a segregated bank account opened at a financial institution mutually agreed by the Parties.  The Qualified Settlement Fund account will receive the Class Settlement Amount from Walmart and will hold that sum, and the earnings thereon, until the Settlement Administrator has completed all administration of such funds and income thereon, as well as disbursements to Settlement Class Members and Class Counsel, and payment of taxes and administrative costs, as more fully set forth in Section 11 of the Settlement Agreement and subject to further approval of this Court, if required.

[11]  With the Court's approval, the parties intend for the establishment of a Qualified Settlement Fund to satisfy the requirements of Treasury Regulation § 1.468B-1(c), C.F.R. § 1.468B-1(c), by (a) being established under this Court's approval, (b) resolving and satisfying claims against Walmart for alleged violations of law, and (c) constituting a segregated account, as required by those regulations.

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I hereby certify that on this date I electronically filed the foregoing **UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT** with the Clerk of the Court by using the e-Flex filing system which will send a notice of electronic filing to the following:

Anthony L. Martin
anthony.martin@ogletreedeakins.com
Dana B. Salmonson
dana.salmonson@ogletreedeakins.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10801 W. Charleston Blvd.
Suite 500
Las Vegas, NV 89135

*Attorneys for Defendant*
*Wal-Mart Associates, Inc.*

DATED: August 14, 2023

*/s/Brittany Manning*
An Employee of Thierman Buck LLP